Henry Logemeyer et al., Appellants, v. Fulton State Bank, Appellee.

Gen. No. 9,704.

Opinion filed January 27, 1942.　Rehearing denied March 25, 1942.

RAMSAY, BULL & YOST, of Morrison, and MCMAHON & POOLE, of Fulton, for appellant.

FRANKLIN J. STRANSKY, of Chicago, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
Appellee bank was closed by the auditor of public accounts on September 24, 1932 and reopened on November 19, 1932. In order for it to reopen, the capital stock was reduced from $75,000 to $50,000, other adjustments were made in the capital structure, and 1186 depositors signed instruments identical except as to the amount of the deposits, the date and names and delivered the same to a committee known as

"Citizens Committee for Reorganization of Fulton State Bank," who in turn delivered them to the representative of the State Auditor then in charge of the affairs of the bank, who, upon permission being granted to reopen the bank, delivered them over to appellee. The instrument so executed by appellant, Henry Logemeyer, is as follows, *viz:*

"KNOW ALL MEN BY THESE PRESENTS, That I, Henry Logemeyer of the City of Fulton, County of Whiteside, State of Illinois, do hereby nominate and appoint the FULTON STATE BANK of the City of Fulton, State of Illinois, (representing the Depositors of the FULTON STATE BANK of Fulton, Illinois, and known as the Reorganization Executive), to be my true and lawful Attorney, and to represent me in any and all proceedings concerning the affairs of said Bank; whether in law, equity, or in any other manner, and more particularly in the reorganization of the said Bank, and do hereby authorize and empower my said Attorney to arrange for and adopt any plan it may deem best for the conserving of the interests of the Depositors of the said Bank and the assets of the said bank; and

"I hereby further authorize and empower my said Attorney herein to use and expend any part of 40% of any deposit or deposits standing to my credit for such purpose; the said sum to be devoted to and be used in the participation of a proportionate share in certain assets of said Bank set aside for the purpose of effecting a guaranty of the remaining deposits and other liabilities of said Bank, hereby giving and granting unto my said Attorney full power and authority to sign, seal, execute; receipt for and deliver any and all instruments that may be deemed necessary to carry out the power herein conferred and granted.

"IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal at Fulton, Illinois, this 17 day of October, 1932.

|  | Amount of Deposit | Amount Waived |
|---|---|---|
| Checking Account | $ 80.39 | $ 32.16 |
| Savings Account 1516 | 100.00 | 40.00 |
| Certificates of Deposit | ——— | ——— |
| Total | 180.39 | 72.16 |
|  |  | 39.69 |

Henry Ten Boer  
   Witness                 Henry Logemeyer''

Under pressure from the auditor to settle with the depositors who had signed the power of attorney, the bank, late in 1937, paid a large number of them 55 per cent of the 40 per cent, exacting from each a complete and final release of the bank. 137 of the depositors refused to make such a settlement and release, and instituted a suit at law in the circuit court of Whiteside county against the bank to recover the full 40 per cent. The bank filed an answer denying liability and filed a counterclaim setting up the power of attorney as a defense, but admitted liability for 55 per cent of the 40 per cent. The cause on the counterclaim was transferred to the equity side. Upon the hearing, it appeared that 55 of the plaintiffs had accepted the 55 per cent of the 40 per cent of their deposits, whereupon the court said they were deemed to be in the same position as having been dismissed as plaintiffs in the case. At the conclusion of the hearing, the chancellor entered a decree dismissing the respective complaints of each of these 55 plaintiffs, found for the bank as to the remaining plaintiffs, except as to the 55 per cent of the 40 per cent of their

several deposits, enjoined all the plaintiffs and their attorneys from further prosecuting their respective complaints at law, and adjudged all the costs against all the plaintiffs. This appeal is to reverse that decree.

Appellee filed a motion to dismiss the appeal for alleged insufficiencies in the abstract and the notice of appeal. The motion was taken with the case. The abstract (page 58) shows: "175–180 (referring to the pages of the record as indicated on page 1 of the Abstract) Notice of Appeal and Proof of Service thereof filed April 4, 1941." The notice of appeal is entitled: "Henry Logemeyer, et al., Plaintiffs—Appellant, vs. Fulton State Bank, Defendant—Appellee. General No. 10349 at Law." It is signed: "Ramsey, Bull & Yost, McMahon and Poole, Attorneys on behalf of Henry Logemeyer, et al., Plaintiffs." It is claimed by counsel for appellee that the quoted words in the abstract are merely an index referring to pages of the record; and that it is insufficient because it does not name and designate the parties in the same manner as in the trial court, as required by rule 33 of the Supreme Court; that the abstract shows the decree is predicated solely on the counterclaim in equity, yet the notice of appeal is entitled in the suit at law; that the causes of action were separate and that appeals could only be at the instance of each individual plaintiff, and that the name of each plaintiff must appear in the notice of appeal; that inasmuch as several of the plaintiffs accepted payment, they were eliminated and could not be injured or aggrieved by the decree, and that only such persons as are injured or aggrieved by the decree have any right to appeal; that "et al" in the notice of appeal does not refer to all plaintiffs remaining in the suit, because it cannot be assumed that some of them did not settle before the notice of appeal was filed and that the abstract does not show when the notice of appeal was filed.

We are not compelled to resort to the record to ascertain the contents of the notice of appeal, for appellee has set out and quoted the parts of it objected to in its motion. It purports to be on behalf of all the plaintiffs, which of course includes those dismissed from the case by the trial court. The fact that the court dismissed a number of the plaintiffs from the case did not preclude them from joining in this appeal. It is to be observed they were not dismissed on their own motion. If they considered they were aggrieved by the decree and the action of the court in this respect, whether they were so aggrieved or not, makes no difference in their right to 'appeal. They had the right to test that question by joining in the appeal. The notice of appeal indicates they exercised that right. The abstract plainly refers to the notice of appeal. Under that reference and the notice of appeal, we have no room to interpret either of them otherwise than as showing the appeal is by all the plaintiffs. The abstract discloses on the first two pages that there were 137 plaintiffs, all of whose claims were identical except as to the amount. This sameness is nowhere controverted. To require each of them to take a separate appeal or to file a separate notice of appeal or to name each individual in the notice of appeal, would only impose a useless burden on appellants and on this court, with benefit to nobody.

It is not contended the notice of appeal was not served or filed in apt time. It is obvious that proof of service could not be made until after service was had. The abstract shows the decree was entered on January 7, 1941. Service of the notice of appeal must necessarily have been on or before April 4th, the date of proof thereof, which is within the required time. To dismiss the appeal for the alleged insufficiencies would be highly technical, and would defeat the announced purpose of section 4 of the Civil Prac-

tice Act [Jones Ill. Stats. Ann, 104.004], which provides the act shall be liberally construed, to the end that controversies may be speedily and finally determined, according to the substantive rights of the parties. Under rule 38 of the Supreme Court the abstract will be taken as sufficient unless the opposite party shall file a further abstract making necessary additions or corrections. The opposite party cannot obtain the dismissal of an appeal except for flagrant disregard of the rule. There is no such flagrant violation here. (*People ex rel. Sandberg v. Grabs,* 373 Ill. 423; *Noe v. Moseley,* 377 Ill. 152.) *Dahm v. Estate of Giroux,* 294 Ill. App. 550, and *Department of Finance v. Bode,* 376 Ill. 374, where the abstract did not present the issues or the nature of the judgment, and other material facts, have no application here. The suit was at law. Transferring it to the equity side of the court in the course of the proceedings, was merely a procedural step. We know of no authority which holds that such a step must appear in the title of the case as abstracted, and such a requirement would have no basis in logic or precedent. The abstract sufficiently and substantially complies with rule 33 and the motion to dismiss the appeal is denied.

On January 21, 1936, the chief bank examiner wrote appellee as follows, *viz:*

"We desire at this time to bring up for discussion, the matter involved in the settlement with your creditors to enable your bank to re-open subsequent to suspension of business in November of 1932. We have before us a copy of the Waiver Agreement executed by depositors under the terms of which your Corporation was given Power of Attorney to represent said depositors in making such adjustments as would enable the Bank to resume business.

"In accepting and exercising this Power of Attorney your Bank unquestionably assumed a position of trust, which has resulted in a substantial accumulation of

funds that clearly belong to said depositors. We believe that your Corporation should determine and declare the extent of this trust and formulate plans for the discharge of same. We shall, therefore, request that this matter be taken up by your Board, with a view toward determining accurately the extent of your obligation, and file with this Department, a declaration as to the extent of same, advising us as to the course of action you intend to pursue.''

A prior communication from the auditor to the same effect had been received by the bank, and subsequent reports of examination of the bank continued to mention the matter. On January 8, 1937, the chief bank examiner sent appellee his report of the examination of appellee bank made at the close of business on November 9, 1936 and in the course of his letter, accompanying a copy of that report, said:

''From figures obtained at this examination, we have recapitulated the adjustment effected at the time of your reopening on November 19th, 1932, as well as the earnings, profits and recoveries accumulated by your bank since that date. We have done this with a view toward arriving at a figure that would represent a fair settlement with certain creditors who waived 40% of their claims against your bank at the time of its closing, September 23, 1932.

''We are mindful of the fact that your management is desirous of reaching a determination in this respect and discharging the trust involved in the power of attorney under the terms of which the depositors' waivers were applied.

''Inasmuch as a five-year period will have elapsed since this compromise was effected on November 19, 1937, we believe that by that time recoveries can, in all probability, be completed and that discussion can be undertaken leading to an agreement between your institution and this department as to the final settlement that should be made with creditors who waived

40% of their claims. Before undertaking such discussions, however, we should like to have you check our figures hereinbelow set forth as follows:

ORIGINAL ADJUSTMENT

Asset Elimination        $334,189.64    $
   Provided by:
Depositors' 40% Waiver              263,955.15
Capital Reduction                25,000.00
Surplus Reduction                22,500.00
Undivided Profits Reduction       22,734.49

                      $334.189.64   $334,189.64

Stockholders Capital Accounts provided 21% of correction

OPERATIONS FROM 11-19-1932 to 11-9-1936

Net from operations            $ 28,641.00
Bond Profits                   10,032.00
Recoveries                    85,756.00

                           124,429.00
Charge Offs                  17,723.00
   Net after Charge Offs      $106,706.00

Market & Recoverable Value
   of Assets written down     $ 82,586.90
Book Value of Assets written
   down                    50,445.67

Anticipated Recoveries from
   Assets written down           32,141.23
Total Earnings, Profits,
   Recoveries & Potential
   Recoveries to 11-9-36       $138,847.23''

In May 1937, the directors called a meeting of the stockholders to consider and take action in the matter, and on August 5th, following, the bank sent the following letter to each of the depositors who had signed the power of attorney, *viz:*

''On or about November 15, 1932, you and other depositors of this Bank signed a Power of Attorney

(hereinafter referred to as a waiver) authorizing the Bank to represent you in its reorganization and for that purpose to use and expend 40% of any deposit then standing to your credit on the books of the Bank.

"Through such cooperation of the depositors the Bank was reopened for business on November 19, 1932, and the remaining 60% of your deposit became immediately available for your use. The Bank has ever since successfully operated and served the community.

"To facilitate the reopening the value of certain assets of the Bank were either wholly or in part charged off on its books. To offset such charge-off your waiver was used. Since then these assets have been carefully administered by the Bank to the end of realizing from them the greatest amount recoverable in the judgment of the officers and directors of the Bank. The amount of such recoveries can now be determined, but not withstanding the diligence used in liquidation they are less than the total amount of deposits waived by the waiver signers.

"After careful consideration of the equities involved, the directors and stockholders of the Bank with the approval of the Auditor of Public Accounts of the State of Illinois, have authorized disbursement, in final settlement to each waiver signer, of a sum equal to 55% of the amount waived by such waiver signer. Such payment will include not only the pro rata share of each waiver signer in the recoveries realized from the assets, which were charged off, but also includes a pro rata distribution to the waiver signers of the net profits realized by the Bank in the period from its reopening to June 30, 1937. Such payment, plus the 60% of your deposit made available to you upon the reopening of the Bank, amounts to 82% of the entire amount on deposit to your credit, immediately prior to the reopening. In consideration of such payment each waiver signer will be required to sign a complete

and final release of the Bank from any further liability in respect of the amount of the deposit so waived by such signer.''

Appellants claim they were induced to sign the power of attorney by statements of certain of the officers of the bank made at meetings of the depositors to the effect that 40 per cent so waived would be repaid by the bank, and by a statement in a letter from the depositors' committee, selected at one of such meetings, to this same effect. The trial court excluded this testimony. Error is assigned on this ruling, but as we view the situation, it is not necessary to consider that matter. The full and complete answer to the contentions of appellee is that it in no way disputed the assertion of the auditor, repeatedly made, that the bank assumed a position of trust in accepting and executing the power of attorney and that the funds accumulated thereby clearly belonged to the depositors.

Appellee recognized that by the action of its depositors, it had been able to resume business on November 19, 1932. It was hopelessly insolvent. The record shows that appellants and the other depositors furnished 79 per cent of the total amount required to resume business. The $70,234.49 representing the remaining 21 per cent, was obtained by reducing the capital, surplus and undivided profits accounts of the bank. The examination of the auditor disclosed that the action of the depositors in making it possible for appellee to resume business resulted in net earnings and recoveries from November 19, 1932 to November 9, 1936 of $138,847.23, which is more than 52 per cent of $263,955.15, which sum represented the total amount of money belonging to the depositors, which was used in November 1932 to entirely eliminate certain assets which the bank held and to depreciate the book value of certain bonds which were then being carried by the bank. The record shows these bonds were depreciated

$282,126.31. In its letter of August 5, 1937, following the stockholders meeting, appellee stated that its offer to pay 55 per cent of the 40 per cent of each deposit not only includes the pro rata share of each such depositor in the recoveries realized from charged off assets, but a pro rata distribution of the net profits realized by the bank from its reopening on November 19, 1932 to June 30, 1937. Appellee's conduct discloses that it never considered the $263,955.15 which it actually received from its depositors as an absolute and unconditional gift. If it concedes that 55 per cent of the 40 per cent belongs to the depositors, the whole 40 per cent belongs to them and there is no reason advanced by appellee why this is not true.

If the bank is not financially in a position to pay the amounts now, it should not be released from liability to pay the amounts over and above the 55 per cent of the 40 per cent, as and when its financial condition will permit payment of the balance. In our opinion, appellee is a trustee and is obligated to return to those appellants who have not settled their claims, the full amount of their deposits when and as soon as it can be done, without hazard to the safety of the bank. If this can be done, now, the decree should so provide. If not, the decree should make proper provision for payment thereof in the future.

Appellee claims that under *People v. Wiersema State Bank*, 361 Ill. 75, and *City of Marion v. Sneeden*, 291 U. S. 262, future earnings of a bank cannot be pledged to pay certain depositors. Those holdings relate to general initial deposits in the usual course of business, and have no application to situations like the instant case where the effect of the transaction was a loan of funds already on deposit, and not an initial deposit to be secured in preference to other creditors. In the case here, the loan was for the benefit of all the depositors and creditors of the bank. *Brown v. Bradford*, 103 Iowa 378, holding that future earnings

of a bank cannot be subjected to claims of certain obligations without action by the stockholders, cannot be invoked here, because the reorganization plan, including the powers of attorney filed with the board of directors, as well as the offer to pay 55 per cent of the 40 per cent of the deposits, was all passed upon and adopted by the stockholders.

The 55 appellants who settled their claims with appellee during the pendency of the proceedings in the lower court, have not shown or urged any reason why they were not properly dismissed from the suit and we consider the appeal as abandoned by them and the portion of the decree which dismissed the respective complaints of these 55 plaintiffs, is affirmed. In all other respects, it is reversed and the cause is remanded to the circuit court with directions to determine whether appellee can return to the other appellants the full amount of their deposits without hazard to appellee at this time, and then to enter a decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*