(No. 26759.—

HENRY LOGEMEYER *et al.*, Appellees, *vs.* FULTON STATE BANK, Appellant.

*Opinion filed September 24, 1943.*

FRANKLIN J. STRANSKY, for appellant.

RAMSAY, BULL & YOST, and METZDORF & BROWN, (MASON BULL, and EDWARD J. METZDORF, of counsel,) for appellees.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) *amicus curiae.*

Mr. JUSTICE GUNN delivered the opinion of the court:

Henry Logemeyer and a number of other depositors of the Fulton State Bank brought suit against the latter in the circuit court of Whiteside county to recover certain amounts of their deposits which had been waived by them during reorganization. The bank answered and filed a cross complaint in equity to the effect that such depositors were entitled only to the proceeds of certain assets which had been withdrawn from the bank. The circuit court decided in favor of the contention of the bank, but was reversed upon appeal to the Appellate Court

for the Second District. An appeal to this court has been allowed.

The facts are substantially as follows: On or about September 20, 1932, an examination of the assets of the Fulton State Bank by the Auditor of Public Accounts disclosed that its capital had been impaired by reason of loss and depreciation in the value of certain securities held by it. As a result the bank was closed and all of its assets turned over to the Auditor and held by him from September 23, 1932, until November 19, 1932, when the bank was reopened. The stockholders, directors and depositors participated in negotiations to form a plan of reorganization to operate the bank without having its assets liquidated by a receiver. The Auditor conferred with the directors and stockholders, and meetings of depositors were held, as the result of which the Auditor of Public Accounts authorized the reopening of the bank, after the following adjustments had been made: On the liability side capital was reduced from $75,000 to $50,000; surplus was reduced $22,500, and the undivided profits account reduced $22,734.49, and waivers of liability for deposits, being forty per cent of each account, aggregating $263,955.15, making a total reduction of liabilities of $334,189.64. To offset this reduction in liabilities, assets of the face value of $334,189.64 were removed or depreciated, and when this readjustment was completed the bank was rendered solvent and permission to resume business was authorized by the State Auditor.

The principal controversy arises out of the effect of the reduction in liability by the depositors. Various negotiations were had, and on October 17, 1932, 1186 depositors out of a total number of 1205 executed and delivered to the bank a document in the following language:

"KNOW ALL MEN BY THESE PRESENTS, That I, Henry Logemeyer of the City of Fulton, County of Whiteside, State of Illinois, do hereby nominate and appoint the FULTON STATE

BANK of the City of Fulton, State of Illinois, (representing the Depositors of the FULTON STATE BANK of Fulton, Illinois, and known as the Reorganization Executive), to be my true and lawful Attorney, and to represent me in any and all proceedings concerning the affairs of said Bank; whether in law, equity, or in any other manner, and more particularly in the reorganization of the said Bank, and do hereby authorize and empower my said Attorney to arrange for and adopt any plan it may deem best for the conserving of the interests of the Depositors of the said Bank and the assets of the said bank; and

"I hereby further authorize and empower my said attorney herein to use and expend any part of 40% of any deposit or deposits standing to my credit for such purpose; the said sum to be devoted to and be used in the participation of a proportionate share in certain assets of said Bank set aside for the purpose of effecting a guaranty of the remaining deposits and other liabilities of said Bank, hereby giving and granting unto my said Attorney full power and authority to sign, seal, execute; receipt for and deliver any and all instruments that may be deemed necessary to carry out the power herein conferred and granted.

"IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal at Fulton, Illinois, this 17 day of October, 1932.

Henry Ten Boer
    Witness                        Henry Logemeyer."

The bank resumed business and on January 21, 1936, received a communication from the chief bank examiner advising he desired to bring up for discussion the matter of the waiver agreements signed by the depositors, and stating that by the exercise of the powers of attorney contained in such waivers the bank assumed a position of trust, resulting in a substantial accumulation of funds belonging to the depositors, and suggested that they indicate to the Banking Department the action they intended to pursue. January 8, 1937, after an examination of the bank, the chief bank examiner again called their attention to the items of assets and liabilities which had been eliminated, and then made a resume of the operations of the bank from November 19, 1932, to November 9, 1936, as follows: Net from operations $28,641; bonds profits $10,032; recoveries $85,756; total $124,429; charge-offs $17,723; net after charge-offs $106,706. It then pointed

out the market value of assets written down, together with the book value as shown by the bank, which indicated additional recoveries of $32,141.23, and showing total earnings, profits, recoveries and potential recoveries in the amount of $138,847.23. These figures were sent to the bank, as stated in the letter, "We have done this with a view toward arriving at a figure that would represent a fair settlement with certain creditors who waived 40% of their claims against your bank at the time of its closing, September 23, 1932."

After receiving this communication a meeting of the directors of the bank was held May 18, 1937, and attention called to the communications of the Auditor, and in the minutes of the meeting, among other things, it was recited: "It was the consensus of opinion that inasmuch as the Power of Attorney referred to was an absolute waiver of 40% of the deposits of each depositor who executed said Power of Attorney on or about November 15, 1932, and any payment made to the signers of said Powers of Attorney would be in the nature of a gratuity, any payment would necessitate the disbursement of capital account funds for extraordinary purposes and should be acted upon at a meeting of the stockholders, if any action to make a payment were taken by the bank."

A resolution was then adopted calling for a special meeting of the stockholders to be held June 22, 1937, to consider what action should be taken on the waivers, and to authorize the directors to carry into effect any action taken by the stockholders. The stockholders meeting was held June 22, 1937, and after reciting the language of the powers of attorney and the substance of the proceedings that had taken place at the time of the reorganization and the communications of the Auditor of Public Accounts, determined "that including in said accounting all of the appreciations of the assets of said bank segregated and depreciated in the reorganization of said bank,

and all of the net earnings of said bank that there is sufficient recovery in the assets of said bank to permit a return to said depositors of said bank who entered into said agreement, in writing, of the sum of One Hundred, Forty-Five Thousand, One Hundred, Seventy-Nine and 33/100 Dollars ($145,179.33)." And it was then resolved that said sum be paid to discharge all liability the bank had assumed or incurred in the use of said waivers of deposits and that said sum, being approximately 55% of the 40% previously waived by the depositors, be withdrawn from the undivided profits and reserve capital accounts of the Fulton State Bank and set aside for disbursement pro rata, and authorized the officers of the bank to pay said sum in full settlement of any liability incurred to the depositors. This action was authorized by 473 out of a total of 500 shares of the bank.

A considerable number of depositors accepted this payment, but the plaintiffs refused, and in a large part based their refusal upon the letter of a citizens' committee under date of October 18, 1932. This purports to be signed by Dr. George H. Thompson, as chairman, and Earl C. Snyder, as secretary, and recited that a plan submitted by the Auditor of Public Accounts, after conferring with the officers, directors and stockholders of the bank, would authorize a settlement substantially as follows: That the bank would reduce its capital stock from $75,000 to $50,000, charging off $68,000 of undivided profits, and in return therefor the depositors would sign a waiver of 40 per cent of the deposits to be carried as a deferred credit, to be repaid out of earnings or profits made in the future; and that the stockholders and owners of the bank were to donate all dividends and profits which would otherwise be paid to them until the 40 per cent waived was paid back. This communication purports to have accompanying it a waiver of 40 per cent for the depositor, but apparently was sent to only non-residents,

as it recites: "We are writing you this letter inviting you to join with the resident depositors to put into effect the plan agreed upon which follows." It also shows that 800 depositors had already voluntarily signed the waivers. It is contended this paper was received by, or at least known to, all depositors, and was authorized by the bank through its properly constituted officers, and that the powers of attorney signed by the stockholders should have contained like provisions for the repayment of the money, and that the whole transaction constituted an agreement, not merely to pay what was realized from the deferred assets, but to pay from future earnings the entire amount of deposits which had been waived. It is to be observed this plan makes no reference to any amount of charge-offs from assets, as required by the Auditor. While not so stated, the implication is strong that the writer believed postponing payment of 40 per cent of deposits, and paying them out of future earnings would be accepted by the Auditor as a satisfactory reduction of liability to offset any elimination or reduction in value of assets.

The circuit court held the plaintiffs' demands would be entirely satisfied by receiving their pro rata part of the sum of $145,179.33, and so decreed. The Appellate Court in reversing the circuit court held that the effect of the transaction was a loan of funds, already on deposit, to the bank, and that the bank assumed a position of trust under the powers of attorney and was obligated to return to the depositors who had not settled their claims the full amount of the deposit as soon as it could be done without hazard to the safety of the bank, and directed a decree to be entered providing for such payment, and, if money was not available at the present time, to make proper provision for its payment in the future.

Appellant claims the bank assumed a position of trust in the amounts received from the charged off and depreciated assets, and that when the full value of the same

had been ascertained and paid its responsibility was ended. It is also asserted the Appellate Court erred when it held the bank assumed a position of trust as to the full amount of deposits waived, and holding that they were in effect a loan. The appellees in effect make three contentions: (1) that the use of the powers of attorney by the bank impressed a constructive trust upon its assets to the full amount waived by the depositors; (2) that the transactions taking place just immediately prior to the reopening of the bank constituted a promise to repay the full amount of 40 per cent of the deposits waived, not from the depreciated assets, but from the future earnings of the bank; and (3) that the exercise of the powers of attorney operated as a loan by the depositors of 40 per cent of the funds they had on hand, or a forbearance to collect such amount.

The proper decision of this case involves not only a consideration of the entire series of negotiations resulting in the reorganization of the bank, but also the power and authority possessed by a bank in such cases, and the authority of the Auditor of Public Accounts with respect thereto.

Before undertaking to decide the rights of the parties under the divergent claims made with respect to what the contract actually contemplated, it is necessary to understand the position of a bank, organized under the laws of Illinois, after it has been closed by the Auditor of Public Accounts because of insolvency, impairment of capital, or other adequate grounds. When a bank is so closed by the Auditor it is well settled its affairs and assets are under his dominion and control; and any contract between such insolvent bank and its depositors, or any plan of reopening or reorganization, without the consent and approval of the Auditor, is void, (*Continental Ill. Nat. Bank and Trust Co.* v. *Peoples Trust and Savings Bank,* 366 Ill. 366,) because under the statute the Auditor of

Public Accounts is the head of the State banking system. This statute (Ill. Rev. Stat. 1941, chap. 16½, par. 11) authorizes the Auditor, when the bank is operating with insufficient deposits, to take possession thereof for the purpose of reorganization or liquidation. After the closing of the Fulton State Bank in September, 1932, its reorganization or liquidation was wholly within the discretion of the State Auditor.

It is equally well settled that any contract or agreement between the directors and stockholders of a closed bank and its creditors for the purpose of a reorganization, which involves the reduction of capital and liability to depositors, and also providing for the creation of future liability to its creditors, is *ultra vires* and void. (*Knass* v. *Madison and Kedzie State Bank,* 354 Ill. 554.) It is likewise well settled that a going bank has no power under the statute to pledge future earnings to secure creditors or depositors, or to pledge assets as a guaranty to a class of depositors. (*People ex rel. Nelson* v. *Wiersema State Bank,* 361 Ill. 75; *City of Marion, Illinois,* v. *Sneeden,* 291 U. S. 262, 78 L. ed. 787; *O'Connell* v. *Chicago Park District,* 376 Ill. 550.) It must be presumed these principles were known to the bank and its officials, to the Auditor of Public Accounts and to the depositors of the bank, and therefore must be taken into consideration in determining the rights of the parties after the reorganization of the bank had been approved by the State Auditor.

It is apparent that for some time after the closing of the bank all of the parties in interest were attempting a solution that would not involve the liquidation of the bank and its assets with its consequent loss and delay. The adjustment finally approved by the Auditor of Public Accounts was that pointed out above, and to accomplish the reduction of deposit liability the power of attorney executed by the several depositors was the authority of the bank to reduce such deposit liability in the sum of

$263,955.15, and thereafter permit its opening by the Auditor as a reorganized and solvent concern. Examination of this power of attorney shows it delegated to the bank authority to adopt any plan for reorganization that it would deem best for conserving the interests of the depositors and the assets of the bank. For that purpose the depositor authorized the bank to "use and expend any part of the 40% of any deposit or deposits standing to my credit for such purpose." It then provided that "the said sum to be devoted to and be used in the participation of a proportionate share in certain assets of said Bank set aside for the purpose of effecting a guaranty of the remaining deposits and other liabilities of said Bank," etc. Among the uses set out in the power of attorney was "the reorganization of the said Bank." Of course, they would be ineffective unless the aggregate amount of waived deposits, together with the amounts contributed from the capital and surplus of the bank equalled the amount of charge-offs and eliminations of bank assets required by the Auditor. It is clear the "assets set aside" specified in the powers of attorney referred to the eliminations required by the Auditor, since their amount was substantially the same as the total of capital contributions and 40 per cent of deposits. The meaning of "assets set aside," "purpose of effecting a guaranty of the remaining deposits" and "reorganization of the said Bank," considered in connection with the set-up approved by the Auditor for purposes of reorganization, seems apparent. The waivers and capital contributions would enable the bank to open, but the waived deposits would share proportionately in collections from assets eliminated by the State Auditor.

The bank as authorized to be reorganized showed that deposits in the amount of $263,955.15 had been waived and assets had been charged off or eliminated to the

amount of $334,189.64, and the difference between such charge-offs and waived deposits made up by contribution from the capital assets of the bank, amounting to $70,234.49, which made a balance. The bank was permitted to open with this readjustment and both the Auditor and the chief bank examiner testified no plan was approved which involved a payment of any of the liabilities of the bank out of future profits, and counsel for appellees stated in court no testimony would be offered to prove such action upon the part of the Auditor.

With these facts before us it seems reasonably clear the powers of attorney were given authorizing the bank to use or expend any part of 40 per cent of the deposits which, with eliminated assets of the bank, would render the balance of the deposits available, but in case of collection of the eliminated assets the same were to be proportionately distributed to those who had waived a portion of their deposits. If the customary manner of placing the charged off and eliminated assets in the hands of a trustee had been followed and directions to such trustee, upon collection, to distribute same among the depositors had been adopted, substantially the same situation would have been presented.

It is claimed by appellees, however, an agreement to pay all of the waived deposits is supported by the Auditor's letter, showing the bank's ability to discharge the trust liability by including net earnings with recoveries and appreciations of charged-off assets; and by the final resolution of the stockholders, including the net earnings of the bank with recoveries, in the recital of its ability to make settlement for the value of waived assets, and that these facts tend to confirm a settlement as set out in the letter of the citizens' committee. This meaning cannot be attributed to such facts because (a) the Auditor is presumed to act lawfully and not unlawfully; (b) the power

of attorney gave the bank the unlimited right to use and expend up to 40 per cent of the deposits; and (c) the only assets in which the waived deposits were to participate under the contract were the "set aside" assets. There is not the slightest intimation the general assets of the reorganized bank were to be pledged to pay the amount of the waivers, nor is there any competent proof that either the bank or the Auditor authorized such a proposal.

When the letter of the Auditor is examined it will be observed that he states the "recoveries" should be completed in a short time to enable a final settlement to be made with the depositors. who had waived 40 per cent, and his statement that recoveries in the amount of $85,756 and anticipated recoveries of $32,141.23, together with other profits as well as charge-offs, showed $138,847.23 was available could have been for no other purpose than to show the bank's ability, as he says in his letter, to determine "accurately the extent of your obligation, and file with this Department, a declaration as to the extent of the same, advising us as to the course of action you intend to pursue." He is indicating a trust in the eliminated assets when he fixes the completion of recoveries as the time to make a final accounting thereof.

When the suggestion of the chief bank examiner was presented to the directors of the bank their reaction was the powers of attorney constituted an absolute waiver of 40 per cent of each deposit, and any payment made, as suggested by the Banking Department, would be in the nature of a gratuity, which would necessitate the disbursement of capital funds which should be authorized by a stockholders meeting, which was called accordingly. At this meeting of the stockholders the resolution recited that after disposing of certain assets they were in a position to render a complete accounting of the assets of the bank segregated and depreciated at the time of its reorganiza-

tion; and further recited that including all appreciation of assets segregated in the reorganization, and all net earnings of the bank, there is sufficient recovery of assets to permit a return to the depositors of $145,179. When it is kept in mind there was some $85,000 face value depreciated assets which had not been collected it is easy to understand how the stockholders were willing to turn over their net earnings to make up this amount, with the knowledge it could be collected from the depreciated assets.

We do not think there is anything in the fact that earnings of the bank were used to effect the cash settlement which requires us to construe the powers of attorney as giving the waiving depositors the right to the earnings. The directors of the bank did not undertake to distribute the cash earnings, but it was the action of the stockholders who owned them which authorized their use to discharge trust liability in the segregated assets, which the Banking Department thought they owed.

Appellees do not contest the principles of law above stated. Their position is somewhat contradictory. They contend in the first instance there was a constructive trust raised in all of the assets of the bank, not merely the segregated assets in favor of the waiving depositors; and also claim there was a promise to pay such waived deposits from future earnings. These positions are conflicting, because a constructive trust is raised by operation of law, while a promise to pay is based upon a contract. They cannot both exist at the same time. They also make the claim the partial waiver of deposits amounted to a forbearance of the right to collect, as distinguished from the finding of the Appellate Court that the transaction was a loan of funds already on deposit. None of these contentions can be sustained.

The contention there was a promise to pay out of the future earnings is based upon the circular letter sent out

by a member of the citizens' committee to a minority of the depositors, in which he, as chairman, set forth this proposition as embodied in the plan of reorganization. The power of attorney enclosed did not conform to the letter, and the letter also discloses that 800 of the depositors had already executed the powers of attorney in the form in which they were finally used in the reorganization of the bank. Upon the trial the circuit court refused to receive in evidence the proposition embodied in the letter of the citizens' committee, or proof that the plaintiffs relied thereon, or that the bank officers had knowledge it had been sent. The Appellate Court did not pass upon this proposition, but the action of the circuit court is so obviously correct it does not require further discussion.

The claim of appellees that a constructive trust was created in all of the assets of the reorganized bank is hard to understand in view of the well-settled principles applying to insolvent banks. If this were in fact true the basis of reorganization approved by the Auditor was in fact false, because the liabilities would be $263,955.15 larger than shown in its opening statement. The deposits would not in fact be waived or used for any other purpose than to change them from a demand liability to a postponed liability which would at once render the capital of the bank impaired. Appellees say this would not injure new depositors as they assert their claim is superior only to the rights of the stockholders, but not to the depositors. The fact remains, however, 60 per cent of the deposits assumed a debtor-and-creditor relation with the reorganized bank, and relied upon its statement of assets and liabilities to pay on demand, and if the other 40 per cent of the deposits had a trust claim against any of the admitted assets of the bank their position was jeopardized. We do not believe it is within the power of a going bank or a reorganized bank to enter into such an arrangement

under our decisions. *Knass* v. *Madison and Kedzie Bank*, 354 Ill. 554; *People* v. *Wiersema State Bank*, 361 Ill. 75; *Continental Ill. Nat. Bank and Trust Co.* v. *Peoples Trust and Savings Bank*, 366 Ill. 366.

The position that the transaction amounted to a loan of the funds already on deposit, or a forbearance after the time to collect funds on deposit, in our opinion also falls squarely within the prohibition that in reorganizing an insolvent bank a pledge of all of its assets cannot be had to secure liabilities. As a matter of law it could not constitute a loan for there is not a word of testimony in the record, or anything in the power of attorney or the letter of the citizens committee that would change the liability of the bank from a deposit liability to a loan. A deposit is neither a loan nor a bailment in the strict sense of the term, and when made in the usual course of business, creating the relation of debtor and creditor, it is not a loan to the bank. *McCormick* v. *Hopkins*, 287 Ill. 66; *Emerson* v. *North American Transportation and Trading Co.* 303 Ill. 282.

We are of the opinion the waivers contained in the several powers of attorney constitute the sole ground of liability of the bank in this case. It is unnecessary for us to construe such waivers, as appellant concedes the bank is liable for collections made from charged-off assets; neither is it necessary for us to determine the rights of such depositors as signed powers of attorney because of statements contained in the letter of the citizens' committee other than to hold the bank is not liable because of matters contained therein. Liabilities of persons other than the bank are not in issue and, even though they may be commented on, are not decided.

No complaint seems to be made that the sum tendered was the full value of the charged-off and eliminated assets. This, in our opinion, was all the appellees were entitled

to, and the several appellees who prosecuted the original appeal were only entitled to their proportionate part.

We deem it unnecessary to comment upon other points raised by briefs of counsel. We are satisfied the decree of the circuit court of Whiteside county was correct. The judgment of the Appellate Court for the Second District is reversed, and the decree of the circuit court of Whiteside county is affirmed.

*Judgment of Appellate Court reversed;*
*decree of circuit court affirmed.*