Emma Smyth et al., Czechoslovak Society of America, and John Kolinsky, Appellants, v. Kaspar American State Bank, Appellee.

Gen. No. 46,419.

First District, First Division.
January 31, 1955.
Additional Opinion, May 13, 1955.
Rehearing denied June 20, 1955.
Released for publication June 20, 1955.

Haddad & Santucci, and Charles T. Kropik, all of Chicago, for appellants; George J. Haddad, and Thomas G. Deering, both of Chicago, of counsel.

Albert E. Jenner, Jr., Philip W. Tone, and William B. Davenport, all of Chicago, for appellee; Johnston, Thompson, Raymond & Mayer, of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiffs, present and former owners of certificates of beneficial interest issued by defendant bank pursuant to a plan of reorganization and reopening of the

bank on January 15, 1935, payable "without interest, solely out of the future recoveries and net profits . . . before any dividends or returns of any kind or character are paid on the capital stock of the bank," suing on behalf of themselves and of all owners of certificates on December 15, 1948 and their successors in interest, appeal from that part of an order entered on the pleadings which dismissed for want of equity the second amended and supplemental complaint (hereinafter called the complaint) as to certain prayers for relief and the allegations pertaining thereto, whereby plaintiffs seek to subject the net profits earned after the reopening of the bank to the payment of the certificates. The part of the order directing that the case proceed in due course as to the issues presented by the remaining portions of the complaint is not before us. Two questions are presented: The validity of the provisions for payment of the certificates out of the net profits of the bank, and, the right of plaintiffs to maintain a class, or representative, suit.

In the complaint the plaintiffs are divided into two classes: Group I, the named plaintiffs and other holders of certificates on December 15, 1948, when a final dividend of 15 per cent was tendered, who retained their certificates and did not receive the dividend, and Group II, the named plaintiffs and others who surrendered their certificates in order to obtain the dividend.

The prayers for relief as to which the complaint was dismissed for want of equity are, that the cancellation by the bank of each certificate surrendered as a condition precedent to the payment of the final dividend be adjudged and decreed to be void and of no force or effect; that the members of Groups I and II be adjudged and decreed to have a first and preferential right to be paid pro rata the full amount of their respective certificates before any dividends or returns of any kind or character are paid on the stock of the

bank; that defendant be enjoined from paying any dividends or returns of any kind or character on its capital stock to its stockholders until such time as the certificates have been paid in full; that until the certificates have been paid in full the defendant be decreed to pay into court any dividend declared on its capital stock to the extent necessary to pay the certificates in full; that the court retain jurisdiction of the cause and the parties thereto until the certificates are paid in full.

Defendant answered the complaint, asserting among other things that insofar as the certificates purport to be and are a pledge of future income, profits, earnings and assets of the bank for the payment, directly or indirectly, of the certificates, they are illegal and void in that they are ultra vires the powers of the defendant and against public policy. Plaintiffs moved, under section 45 of the Civil Practice Act [Ill. Rev. Stats. ch. 110, § 169; Jones Ill. Stats. Ann. 104.045], to strike the answer or certain parts of the answer. The motion was denied. Plaintiffs' counsel in open court declined to plead further to certain paragraphs of the answer and, in respect to these paragraphs, elected to stand on their motion to strike. The ruling on the motion to strike is not questioned on appeal and the error, if any, in that ruling is waived. Defendant moved for a decree in its favor on the pleadings dismissing the complaint for want of equity as to the prayers of relief hereinbefore mentioned and the allegations pertaining thereto. The motion was allowed.

The following facts, aptly pleaded, are uncontradicted. The bank was closed by the Auditor of Public Accounts of the State of Illinois (hereinafter called the Auditor) on June 24, 1932, and a receiver appointed. Among its assets were slow, frozen or uncollectible assets (hereinafter called frozen assets) of an aggregate book value in excess of $3,000,000. A reorganization was effected under the supervision of

68

the Auditor, and the bank resumed business January 15, 1935. More than 7,000 depositors severally executed depositor's agreements (hereinafter called waivers) whereby each depositor waived and released from payment 60 per cent of the amount standing to his credit on the books of the bank as of April 15, 1933 (54 per cent of the amount of his credit as of June 24, 1932) and agreed "to accept in lieu of payment in cash and as evidence of said sum waived, a deferred certificate/or a certificate of beneficial interest issued by said bank for a like sum, payable out of the future recoveries and the net profits of the bank and before any dividends or returns of any kind or character are payable to the stockholders." In consideration thereof the bank issued to the respective depositors a certificate of beneficial interest for the amount waived by him. These certificates amounted in the aggregate to more than $1,800,000. Each certificate recited that the certificate and all provisions thereof were subject to the terms, conditions and provisions of the waiver signed by the holder or his predecessor in interest as a depositor of the bank; that the waiver was incorporated in the certificate and made a part thereof, with the same force and effect as if the same were set forth therein in full, and that payment shall be made on such dates and in such manner as the bank shall determine, but only with the written approval of the Auditor; that before final payment shall be made the certificate shall be surrendered to the bank for cancellation, and that ". . . no lien or preference of any kind exists against any of the assets of the bank in favor of the holder of this certificate, and that payment hereon shall be made from time to time in such amount as shall be directed by the Auditor of Public Accounts in his sole discretion."

Prior to the filing of the second amended and supplemental complaint in May 1953, the net earnings of the bank were at least $343,203. No dividends had been

paid or other returns made to the stockholders. The liquidation of the frozen assets had been committed to a liquidator appointed by the Auditor. To and including May 13, 1946 the bank had distributed or provided for distributions aggregating 55 per cent of the face amount of the certificates from the proceeds of frozen assets. September 21, 1948 the Auditor advised the bank in writing that no disbursements had been made to the holders of certificates since May 1946; that the bank's report of conditions as of close of business June 30, 1948 showed sufficient accumulations of recoveries and profits in its capital structure to make at least a 15 per cent distribution to the certificate holders. He requested that a disbursement of that amount be made. December 15, 1948 the bank in a letter to certificate holders stated that in return for their waivers they had received a "Certificate of Beneficial Interest to the effect that your waived deposit was to be repaid to you from the liquidation of the assets and out of future earnings of the bank"; that in considering a similar arrangement the Supreme Court of Illinois had decided in Logemeyer v. Fulton State Bank, 384 Ill. 11, that "the certificates were payable solely out of the money realized from the liquidation of the assets"; that all the frozen assets had been liquidated and the amount realized therefrom was insufficient to pay the certificates in full, and "since the Supreme Court decision is binding upon us, we are now required to make a final distribution, which amounts to 15% of the original sum waived by you"; that the check for each holder was ready at the bank and would be delivered only on surrender of the certificate, which would be canceled and kept by the bank. As of April 24, 1953 the holders of 5,874 certificates, to whom $250,980.74 of the final payment of $270,668.32 was payable, had received their checks and surrendered their certificates for cancellation, as provided in the certificate, leaving $19,687.58 of the final dividend unpaid. The certificates not sur-

70

rendered are 1,187 in number and represent 8 per cent of the original face value of the certificates issued.

Defendant rests its claim that the provision for payment of the certificates out of the future net profits of the bank before payment of any dividends or returns of any kind or character on the capital stock and under the terms and conditions of the certificates, is against public policy and void upon the decision in Logemeyer v. Fulton State Bank, 384 Ill. 11, referred to in the letter of the bank to the certificate holders. Counsel say that the decision controls the case at bar. So far as the Logemeyer case is material here the court decided only that the bank had not contracted to repay waived deposits out of future profits. In the reorganization of the Fulton bank, which had been closed by the Auditor, depositors signed powers of attorney authorizing the waiver of 40 per cent of their deposits. More than four years later the Auditor wrote the bank, giving a resumé of the bank's operations from November 19, 1932, when it resumed business, to November 9, 1936, showing total earnings, profits, recoveries and potential recoveries from the assets segregated or set aside by the Auditor. These figures were sent, as stated in the letter, "with a view toward arriving at a figure that would represent a fair settlement" with the waiving depositors. Several months later the officers of the bank, pursuant to authority from the stockholders, offered to pay a sum, approximately 55 per cent of the deposits waived, in full settlement of the liability to the depositors. Plaintiffs refused to accept the settlement and brought an action at law to recover the full amount of the deposits waived by them. The bank answered and filed a cross-complaint in equity to the effect that plaintiffs were entitled only to the proceeds of certain assets which had been withdrawn from the bank. The trial court decreed that plaintiffs' demands would be entirely satisfied by receiving their pro rata part of the sum offered. The decree was reversed by

71

the Appellate Court (313 Ill. App. 270) but affirmed by the Supreme Court. In the latter court all contentions of plaintiffs were rejected, including their claim that the transactions immediately prior to the reopening of the bank constituted a promise to repay the full amount of deposits waived from the future earnings of the bank. In stating the position of an Illinois bank after it has been closed by the Auditor, the court said: ". . . any contract between such insolvent bank and its depositors, or any plan of reopening or reorganization, without the consent and approval of the Auditor, is void (Continental Ill. Nat. Bank and Trust Co. v. Peoples Trust and Savings Bank, 366 Ill. 366)." It added, ". . . both the Auditor and the chief bank examiner testified no plan was approved which involved a payment of any of the liabilities of the bank out of future profits, and counsel for appellees (plaintiffs) stated in court no testimony would be offered to prove such action upon the part of the Auditor." The court held that "the waivers contained in the several powers of attorney constitute the sole ground of liability of the bank," and that "the only assets in which the waived deposits were to participate under the contract were the 'set aside' assets."

Here there is no dispute about the agreement of the bank to repay the waived deposits out of future net profits. The legality of the undertaking is attacked. The agreement was entered into while the affairs and assets of the bank were under the dominion and control of the Auditor, and with his consent and approval. It is not ultra vires the powers of the bank unless it is inconsistent with the requirements of public policy for the protection of depositors and creditors of the bank. These requirements are stated in People ex rel. Nelson v. Wiersema State Bank, 361 Ill. 75, where the receiver of a closed bank petitioned to have a pledge of certain assets of the bank to secure deposits of the Fernwood Park District declared void, and for return of the

property pledged. The pledge was given before the bank closed. The Supreme Court affirmed the decision of the trial court and Appellate Court that the pledge was void. The court defines public policy as "being that principle of the law which declares that no one may lawfully do that which has a tendency to be injurious to the public welfare," and quotes with approval from Farmers & Merchants State Bank v. Consolidated School Dist. No. 3, Kanabec County, 174 Minn. 286, as follows: " 'The primary duty of the banker is to protect and maintain that right (the depositor's) unimpaired. The plainest public policy demands that it shall be so maintained. Therefore, anything which unavoidably and in the usual course of things tends to its impairment is contrary to public policy.' " After referring to many other cases, the court concludes:

"The controlling feature to be observed is the paramount interest of the public in the welfare of those institutions and the preservation of the equality of the rights of those dealing with them. A pledge withdraws capital assets. (Texas and Pacific Railroad Co. v. Pottorff, supra.) Without a stable system of banking, commerce and trade must cease. . . . To permit such pledges would be inconsistent with many provisions of the Banking act which are designed to insure, in case of disaster, uniformity in the treatment of depositors and a ratable distribution of the assets. In consonance with the holdings of a majority of the courts of last resort in this country, we are of the opinion that the general practice of pledging assets by banks to secure deposits is not only unnecessary, but is dangerous to the general welfare and is against public policy."

The agreement in the instant case is easily distinguished from the transaction before the court in the Wiersema case. A pledge of assets gives a preference to the favored depositor. It withdraws capital assets

73

and may impair the capital of the bank and render it insolvent. No such consequence can result from the agreement before us. The rights of the certificate holders are inferior to the rights of the depositors. There are no net profits out of which the waived deposits may be paid, unless the bank is solvent and its capital is unimpaired. The rights of the certificate holders are superior only to the rights of stockholders to dividends or other returns on the capital stock before the certificates are paid in full. Payment of the certificates cannot be enforced by money judgment or decree. They are payable only "on such dates and in such manner as the bank shall determine, and only with the written approval of the Auditor," and "from time to time in such manner as shall be directed by the Auditor of Public Accounts in his sole discretion." For payment the certificate holder must rely on the directors' sense of justice and the hunger of the stockholders for dividends. The agreement is not contrary to public policy. It promotes the general welfare, for without similar agreements there will probably be no reorganization of banks with depositor support.

Defendant contends that the acceptance of checks for the final dividend and the surrender of certificates for cancellation, as required by the contract, constitute an accord and satisfaction of the claims of the certificate holders who made the surrender. So far as the pleadings show, the acceptance of the dividends and the surrender of the certificates were voluntary, after a full and fair statement by the bank of its position that under the decision in Logemeyer v. Fulton State Bank, 384 Ill. 11, payments could not be made out of net profits. The basis of the bank's conclusion was thus made known to each certificate holder. Able counsel have argued in good faith in support of that position. The right of certificate holders to further payment was disputed. The acceptance of the final dividend constituted an accord and satisfaction. Greenberg v. Metro-

74

politan Life Ins. Co., 379 Ill. 421, 423; Janci v. Cerny, 287 Ill. 359, 366; Snow v. Griesheimer, 220 Ill. 106, 109–110; South Side Coal Co. v. Gross, 157 Ill. App. 218, 219. ■■ As to persons in Group I, the named plaintiffs and other certificate holders who refused to accept the final dividend, the named plaintiffs have properly brought a class or representative suit to establish a common fund, the net profits, out of which all persons retaining their certificates may be paid pro rata. Kimbrough v. Parker, 344 Ill. App. 483, 486, and cases cited; Eames v. Doris, 102 Ill. 350. The members of Group II, named plaintiffs and other persons who surrendered their certificates and accepted the final dividend, have no right of action. Furthermore, any right of the members of this group to attack the cancellation of their certificates on the ground of fraud or duress, is personal, and cannot be made the basis of a class or representative suit. Langson v. Goldberg, 373 Ill. 297; Morris v. The Broadview, Inc., 328 Ill. App. 267. It is certainly not to the interest of members of Group I that the surrender and cancellation of the certificates held by members of Group II be held void and of no effect.

The order appealed from is reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

BURKE, P. J. and FRIEND, J., concur.

ADDITIONAL OPINION ON REHEARING

On petition for rehearing plaintiffs raise for the first time the defense of mistake of law and fact to the accord and satisfaction which we held was a bar to the claims of plaintiffs in Group II. As the defense presents the question whether, upon the uncontested facts before us, the defendant will be unjustly enriched

75

$500,000 or more at the expense of former holders of 5,874 certificates of beneficial interest, we granted a rehearing and oral argument.

 Defendant contends that the defense of mistake is not open for consideration. It says that nothing in the pleadings "suggests a mistake of law or fact by any party. No facts are alleged from which a mistake could be inferred." As defendant's statement indicates, it is not necessary that the complaint should allege in express terms that the certificates were surrendered and canceled through mistake. It is sufficient if it sets up facts from which such a conclusion is inevitable or fairly deducible. Darst v. Lang, 367 Ill. 119. Plaintiffs need not, and should not, state in the complaint any matters of which the court is bound judicially to take notice or is supposed to possess full knowledge. Story's Equity Pleadings (10th ed.) sec. 24. In testing the sufficiency of a pleading we consider the averments of the pleading and the pertinent facts of which courts take judicial notice, although not pleaded (People v. Snyder, 279 Ill. 435; 41 Am. Jur., Pleading, sec. 244); or, as held in James v. Unknown Trustees, etc., of Three-In-One Oil & Gas Co., 203 Okla. 312, 220 P.2d 831, the pleadings should be read as incorporating everything of which the courts take judicial notice, though not alleged. Finally, the complaint should be construed liberally, with a view to doing substantial justice between the parties. (Civil Practice Act, sec. 33, subpar. 3 [Ill. Rev. Stats. 1953, ch. 110, § 157, subd. (3); Jones Ill. Stats. Ann. 104.033, subd. (3)].)

It is alleged in the complaint that defendant sent to each certificate holder the letter of December 15, 1948 (an exhibit to the complaint) in which it construed the certificates of beneficial interest as providing for the repayment of waived deposits "from the liquidation of the assets and out of future earnings of the bank," and represented to each certificate holder that in passing

76

on a similar agreement the Supreme Court in the case of Logemeyer v. Fulton State Bank, 384 Ill. 11, decided that "the certificates were payable solely out of the money realized from the liquidation of the assets"; that all the assets of the old Kaspar American State Bank had been liquidated, and, "since the Supreme Court decision is binding on us, we are now required to make a final distribution which amounts to 15 per cent of the original sum waived by you. Consequently, your check is now ready at the bank. . . . No check will be delivered without surrender of the certificate. The certificate will be canceled and kept by the bank." Plaintiffs further allege that the holders of 5,834 (5,874) out of 7,061 certificates originally issued, requested and received the distribution tendered and were required by the bank to and did surrender their certificates; that the bank canceled the certificates; that there was no consideration for the surrender and cancellation of the certificates. Plaintiffs pray that the cancellation of the certificates so surrendered be adjudged and decreed void and of no force and effect. There is also a prayer for general relief.

When the foregoing facts are read with the opinion in the Fulton State Bank case of which we take judicial notice, incorporated therein, we find two material facts are misstated in defendant's letter. The agreements between the defendant bank and its depositors and between the Fulton State Bank and its depositors are materially different, not similar, in that there was no agreement by the Fulton State Bank to repay waived deposits out of future earnings, and the decision in the Fulton State Bank case was not binding on defendant and did not prohibit payment of waived deposits out of future earnings. So far as the complaint and defendant's answer show, these misstatements were made innocently and in good faith and were accepted as true, without investigation, by the certificate holders. It necessarily follows that the cer-

77

tificates were surrendered and canceled under a mutual mistake of fact, or law and fact.

██ Whether the mistake is a mistake of law or of fact is not the important question when relief is sought in a court of equity. The generally accepted principle is stated in Reggio v. Warren, 207 Mass. 525, where the court said:

"So it has been said that the important question was not whether the mistake was one of law or of fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties."

In Story's Equity Jurisprudence (14th ed.) sec. 164, the rule is stated as follows:

"If nothing more than a bare mistake of law be shown, the relief will rarely, if ever, be granted. But where it further appears that a party is availing himself of the mistake to enforce an unconscionable advantage, without consideration, and the opposite party is without blame in the premises and the parties can be replaced, respectively, in their former positions, equity will interfere to relieve from such mistake of law."

This is the law in Illinois, Peter v. Peter, 343 Ill. 493; Darst v. Lang, 367 Ill. 119; Barkhausen v. Continental Ill. Nat. Bank & Trust Co. of Chicago, 3 Ill.2d 254, 269–270.

Defendant ignores the misstatements in its letter to the certificate holders and bases its case on the unquestioned rule that a compromise of a doubtful right will not be set aside on the sole ground of misapprehension of law. In conformity with this rule we held in the original opinion that the accord and satisfaction

pleaded by defendant was a bar to the claims of the holders surrendering their certificates. Our attention had not been directed to the defense of mistake now urged, and we overlooked the obvious material difference between the agreements in the instant case and in the Fulton State Bank case and the resulting fact that the statement of the binding effect of the decision in the latter case on defendant was erroneous, as our opinion clearly indicated.

■ However, as the authorities cited by defendant show, a compromise of a doubtful right is upheld only "when fairly entered into" (Story's Equity Jurisprudence, 13th ed. (1886) sec. 131), where "there is no fraud, misrepresentation, concealment, or other misleading incident" (3 Pomeroy's Equity Jurisprudence, 5th ed. (1941) sec. 850), and where neither the defendant nor his attorney made any misrepresentation to the plaintiff of any matter of fact. Stover v. Mitchell, 45 Ill. 213.

It is immaterial whether the misleading statements were made innocently or fraudulently. In Engelbrecht v. Engelbrecht, 323 Ill. 208, the defendant, an adopted son of plaintiff's deceased husband, procured an agreement favorable to himself settling the rights of the parties in the estate of the deceased. After investigation made by his attorneys he represented to plaintiff that she was not the lawful wife of the deceased because there was no record of a divorce from her first husband, John Zech. She employed attorneys to investigate, and they reported to her that there was no record of a divorce. Both attorneys were honestly mistaken, for reasons stated by the Supreme Court, which said (p. 211):

"It is admitted by the parties, and the evidence shows, that when the attorneys advised Maria (plaintiff) that she was not legally divorced from Zech they were honestly mistaken. Because of her inability to speak the English language plainly, both attorneys had

79

searched for her name in the records under the letter 'S.' In order to grant relief, however, it is not necessary to find that the false representation which induced Maria to execute the agreement was made with fraudulent intent. (Champlin v. Layton, 18 Wend. 407, 31 Am. Dec. 382; 2 Pomeroy's Eq. Jur. sec. 847.) She signed the agreement which gave to Fred (defendant) property to which he was not entitled, under a misrepresentation which, however innocently made, operated as a fraud on her. It is against conscience for those who led her into the error to insist on the fruits of the contract."

Winkelman v. Erwin, 333 Ill. 636, is especially pertinent. There, as here, plaintiffs accepted without investigation an erroneous statement innocently made by defendant's agent. In affirming relief granted by the trial court from the transaction induced by the misrepresentation, the Supreme Court said (p. 642):

"The mistake cannot be said to be due to the negligence of the appellees. They had no knowledge of the boundaries of the land. Mrs. Thompson represented the appellants. She undertook to make the inquiries necessary to determine the location of the boundaries, and the fact that the appellees accepted her statements, based, as she said, upon the inquiries she had made, would not justify holding them responsible for the consequences of their common mistake. . . . Mrs. Thompson made no intentional misrepresentation, but her statement led the appellees to believe that the twelve acres were included in their purchase. Under these circumstances the appellees, when they discovered the mistake under which they had entered into the contract, were justified in rescinding it."

 The certificate holders received nothing for the surrender of their certificates. Defendant parted with nothing to get them. The certificate holders lost all right to the 30 per cent of the face amount of the cer-

tificates remaining unpaid, and defendant stands to gain $500,000 or more out of profits earned and to be earned (present earnings exceed $343,000). In insisting on retaining the fruits of the surrender of the certificates defendant is availing itself of a mistake induced by it to enforce what is called, in Story's Equity Jurisprudence, hereinbefore quoted, "an unconscionable advantage, without consideration." Under such circumstances, equity will grant relief. The facts pleaded and the matters of which the court takes judicial notice show a mutual mistake of law and fact in the surrender and cancellation of the certificates, and the defense of mistake is properly raised.

Finally, defendant says that relief from the mistake on which the members of Group II rely, like relief from fraud and duress, cannot be made the basis of a class suit, and, that there is a conflict between the members of the two groups in that it is against the interest of Group I that the surrender of the certificates by members of Group II be set aside.

■ Plaintiffs bring the suit on behalf of themselves and all owners of certificates on December 15, 1948, the day on which defendant declared its inability to make payments from profits. On April 24, 1953 (the amended complaint was filed May 11, 1953) the holders of 1,187 certificates (Group I) still retained their certificates, and the holders of 5,874 certificates (Group II) had surrendered their certificates and accepted the 15 per cent dividend tendered as a final payment. Plaintiffs were compelled to join two causes of action —an action to establish the validity of the agreement to pay the certificates out of net profits, and an action for the rescission of the surrender and cancellation of the certificates once held by the members of Group II, a condition precedent to the right of members of that group to join as plaintiffs in the first action. Stephens v. Collison, 249 Ill. 225, 231–232. The action for rescission is a controversy between defendant and members

81

of Group II to which the members of Group I are neither necessary nor proper parties. It is not essential that the parties each have an interest in all the matters involved in a suit. King v. Rice, 285 Ill. 123, 128.

The mere fact that the pro rata share of a participant in a common fund is increased or decreased by the number and amount of claims allowed against the fund, does not, because of conflict of interest between the claimants, bar a class suit to establish the fund. The relation of a certificate holder in the instant case to other holders of certificates, is like that of a creditor of an insolvent bank to other creditors in a class suit to establish the liability of the stockholders. In commenting on such suits the Supreme Court in Newberry Library v. Board of Education of Chicago, 387 Ill. 85, 92, said: "The remedy to be obtained is affected by the amount of constitutional liability of the stockholders and the number and amount of the claims against the bank. In such a case there is not only a community of interest in the subject matter of the suit but likewise in the remedy." State Life Ins. Co. v. Board of Education of Chicago, 394 Ill. 301, cited by defendant, involved the payment of tax anticipation warrants, the tax collected being insufficient to pay the warrants. The sole controversy was the method in which the fund was to be distributed among the several holders of warrants—whether the warrants should be paid in full in the order of issue until the fund was exhausted, or whether all holders of warrants should share pro rata in the fund. In denying the right to maintain a class suit the court said (p. 310): "Clearly, as to the distribution of the fund, there is a potential conflict of interest between every holder of warrants with every other such holder. They have no common interest in the question of the method of distribution." Here there is no question of priority of payment of any certificate. Each holder will share pro rata with all other holders.

82

The depositors who signed the waivers and accepted certificates of beneficial interest payable to the individual creditor, acted in furtherance of a common object—the reorganization and reopening of the bank. The waivers were executed "in consideration of the execution of like agreements on the part of other depositors of said bank," and the certificates are payable "solely out of the future recoveries and net profits . . . from time to time pro rata with other sums for which similar certificates have been issued." Although each certificate is the separate property of the person holding it, it is payable only out of the common fund—future recoveries and net profits. The misrepresentation which induced the mistake from which members of Group II ask relief, was designed to and did procure the surrender by certificate holders of all right to further payments from that fund. The misrepresentation to each certificate holder is identical—the letter of December 15, 1948. The average amount unpaid on the certificates surrendered is about $80. The cost of an individual action for rescission is prohibitive and will ensure the permanent retention by defendant of the fruits of the mistake induced by it. Necessity from which the class suit arose requires extension of the procedure to cases like this to prevent a denial of justice. Moreover, benefit from a decree of rescission can come only from individual action of each holder who surrendered his certificate. Plaintiffs pray that the court ascertain, adjudge and decree the persons entitled to participate in the benefits of the decree to be entered and the amount of their respective claims. This will require the filing and proving of claims by the individual holders who have surrendered their certificates, within a time and in the manner fixed by the court. Failure to make this proof will bar all claims of these holders under the decree. The named plaintiffs in Group II are not electing on behalf of the unnamed plaintiffs in this group to receive further payments on each certificate theretofore surrendered.

83

They are merely seeking to establish by decree a condition precedent to the right of themselves and each member of Group II, at his election, to assert his claim against the common fund. Precedent for this procedure is found in Alabama Independent Serv. Station Ass'n v. Shell Petroleum Corp., 28 F. Supp. 386 (Dist. Ct. N. D. Alabama), an action in equity by the association and named members against the defendants to enjoin the violation of antitrust laws and recover damages. The court held that the association could not sue for damages suffered by its members, and said: "We may add that the remaining plaintiffs, as operators of gasoline service stations, may properly remain as plaintiffs, and may sue on behalf of all of the similarly situated parties described in the complaint. . . . However, for the recovery of damages, each member of the class must intervene to assert and prove such damages to himself." Langson v. Goldberg, 373 Ill. 297, and Morris v. The Broadview, Inc., 328 Ill. App. 267, cited in obiter dictum in our original opinion, are not applicable to the facts in this case. The class action instituted herein to rescind the surrender and cancellation of the certificates because of the mutual mistake of the parties is proper.

Except as modified herein, our original opinion and this additional opinion on rehearing will stand as the opinion of the court. The order appealed from is reversed and the cause remanded for further proceedings in conformity with the views expressed therein.

Reversed and remanded.

BURKE, P. J. and FRIEND, J., concur.