(No. 26870.—Decree affirmed.)

GEORGE F. WOOD *et al.,* Appellants, *vs.* FIRST NATIONAL BANK OF WOODLAWN *et al.,* Appellees.

*Opinion filed September 21, 1943.*

HAROLD N. HARRISON, F. MARK MILLER, MATTHEW E. MURRAY, HUGH V. MURRAY, JR., and LESTER R. CARL- SON, (JOSEPH C. LAMY, of counsel,) for appellants.

GILBERT & GILBERT, MOSES PULVERMAN, and KIGER & DILSAVER, (RUSSELL B. JAMES, of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This cause comes to this court by direct appeal from the circuit court of Jefferson county. The title to 40 acres of land located in that county is involved. It was owned by William C. Wood and Margaret, his wife, and on October 20, 1931, they mortgaged it to Grover Wheeless to secure the payment of $535. Wheeless assigned the note and mortgage to the defendant First National Bank of Woodlawn. It will be hereinafter referred to as the bank. Margaret Wood died intestate in 1932, leaving William C., her husband, and plaintiffs George F. Wood, Grace Schmidt, H. Glen Wood and Leaffia Howe, her children, as her only heirs-at-law. William C. Wood died intestate in April, 1940, leaving plaintiffs as his only heirs-at-law.

In November, 1935, the bank started a foreclosure suit and made William C. Wood and the above named heirs-at-law of Margaret Wood parties defendant. H. Glen Wood filed an answer but all the other defendants were defaulted. On July 31, 1936, a decree of foreclosure was entered fixing the amount due and directing payment within 30 days. It directed that if payment was not made within the time specified, the master in chancery should sell the land, or so much thereof as was necessary to realize

the amount due "at public vendue, for cash in hand to the highest bidder * * * that he give public notice of the time and place of said sale, by previously publishing the same in a secular newspaper published in said County and posting notices as the law requires * * *." It directed that the master issue the purchaser a certificate, that he record a duplicate of it, that he make certain distribution of the proceeds of sale and make a report to the court of such distribution and sale. The master fixed September 5, 1936, as the date of sale and caused notice to be published in accordance with the terms of the decree. At the sale the bank bid $782.80 and H. Glen Wood then bid $800. There were no other bids and the master declared it sold to H. Glen Wood. Wood did not pay the purchase price and on September 21, 1936, the master mailed him a letter in which it was stated that Wood had purchased the property at the sale held on September 5, that the purchase price should be paid before the first of October, "otherwise, under the statute, I will be compelled to pursue another course." Wood did not make the payment. The master did not make a report of sale showing that he had sold the property to H. Glen Wood for $800 but on October 1, he prepared and filed with the clerk of the court a report of sale in which it was stated that at the sale held on September 5 he struck off and sold the property to the First National Bank of Woodlawn for $782.80, that being the highest and best bid. The same date that the report of sale was filed, the master issued a certificate of purchase to the bank and filed a duplicate with the recorder of deeds. The facts set forth in the certificate as to the name of the purchaser and purchase price were the same as contained in the report of sale. On December 9, 1937, the bank surrendered its certificate of purchase to the master and he, in turn, delivered his deed. On the same day he filed a report of deed which was approved on January 10, 1938. The report of sale filed October 1,

1936, was not approved by court order until June 10, 1941. After it was approved and on the same day, the master issued and delivered a second deed to the bank. On September 2, 1941, plaintiffs tendered the master the amount necessary to redeem from the sale. He refused to accept it and plaintiffs paid it into court when this suit was started on September 5, 1941. The action was against the bank, its lessee, who holds an oil and gas lease, and various grantees in certain mineral deeds. The prayer, which was in the form of an alternative, asks that the two deeds of the master to the bank, the oil and gas lease, the several assignments of it, and the mineral deeds be declared void, or if the sale be adjudged to be valid, then plaintiffs be given the right to redeem in equity from such sale, that there be an accounting to determine the amount to be paid to effect such redemption and that the oil and gas lease, the assignments of it and the mineral deeds be declared void, or in the alternative that they be decreed to be subject to plaintiffs' redemption. After the filing of answers and hearing of evidence, the complaint was dismissed for want of equity. This appeal followed.

The relief sought by the alternative prayer presents a double aspect to this case. The first alternative asks that the sale to the bank be declared void and that the master's deeds, the oil and gas lease, the several assignments of it, and the mineral deeds be canceled. This is founded on an entirely different theory from the other alternative which prays that plaintiffs be granted a right to redeem from the sale. The former is an attack upon the validity of the sale and the orders and deeds which followed, while the latter is in recognition of their validity.

The contentions of the respective parties make it necessary to consider this case as to each form of relief prayed. Defendants argue that the complaint is to review the foreclosure record and that being a bill of review, or a bill in the nature of a bill of review, it should have been started

within the time allowed by the Civil Practice Act for perfecting an appeal or writ of error, which is one year. In computing time for perfecting an appeal, the respective parties start at different dates. Defendants count from January 10, 1938, when the order which approved the master's report of deed was entered, while plaintiffs start with June 10, 1941, when the order approving the master's report of sale and ordering the second deed was entered. In considering the question under consideration, we do not deem it necessary to determine which of these dates controls. It is evident that the case upon which the prayer for right of redemption was founded is not in any sense a proceeding to review the decree of foreclosure or any of the orders entered in that action, and, as to that branch of the case, this contention of defendants is without merit. As to the other alternative of the prayer, it will be noted that the complaint in this cause sets forth the decree of foreclosure entered in the former suit, the circumstances of the sale, the certificate of purchase issued by the master, his report of sale and the two deeds issued by him to the bank. The decree had been executed by the sale, its approval and the delivery of the deed. The law is that where a decree has been executed, the proper prayer for a bill to review such decree is that it be reversed and that the plaintiff be restored to his former condition or status, the same as though the decree had not been rendered. (*Knobloch v. Mueller*, 123 Ill. 554.) That was the effect of the complaint upon which the first alternative prayer was based and although plaintiffs have designated their action as one to remove cloud on title, its real purpose was to obtain a reconsideration and readjudication of the circumstances surrounding the sale in the light of the additional facts submitted.

For practical purposes, bills of review or bills in the nature of bills of review are divided into three classes, which are: Bills to correct error appearing on the face

of the record, bills to introduce newly discovered evidence and bills for fraud impeaching the original transaction. (*People* v. *Sterling,* 357 Ill. 354; *Moore* v. *Shook,* 276 Ill. 47.) The foreclosure proceeding appeared on its face to be regular and the deeds executed by the master to have been fully authorized by court action. There is nothing in the facts alleged or the prayer that would furnish grounds for relief to correct error appearing on the face of the record. Nor can it be sustained as a bill to bring in newly discovered evidence, for one of the essentials of such an action is that the evidence must have been discovered since the former trial and that failure to know of it and introduce it was not due to plaintiff's lack of diligence. The facts upon which plaintiffs now seek to impeach the former record were known to them or could have been ascertained immediately after the master filed the duplicate of the certificate of purchase with the recorder on October 1, 1936. Plaintiffs do not explain their failure to present the evidence of the irregularity of the master in the foreclosure proceeding other than to say they had no notice that the master was making application to have the report of sale and report of deed approved. In this character of action where a showing of diligence is requisite to the maintenance of the suit, a plaintiff does not show diligence by the mere assertion that he had no notice that the court was going to enter an order when, as a fact, he was a party to the action. It requires evidence of affirmative acts on his part, something to show that he was faithfully endeavoring to obtain the evidence which he now offers but for some unavoidable reason was not able to discover. It appears that after the first master's deed was executed in December, 1937, William C. Wood, the father of plaintiffs, who had been residing on the premises during the time the foreclosure proceeding was pending, vacated the premises and surrendered possession to the bank. The bank paid the taxes for the years 1936-

1940, inclusive, and in February, after they obtained the deed in December, leased the farm lands.

Plaintiffs can not maintain this action as a bill of review based on the fraud of the master. They claim the fraud vitiated the sale and left the court without jurisdiction to approve it. As has been stated, the plaintiffs in this suit were defendants in the foreclosure action, and that the court had jurisdiction of them and of the subject matter is not questioned. Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a complaint states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void. If a judgment is collaterally attacked under such circumstances of jurisdiction, it is immaterial how irregular or erroneous its proceedings may have been. Such a judgment is binding on the parties and on every court unless reversed or annulled in a direct proceeding. If there is a total want of jurisdiction in a court, either as to the subject matter or as to the parties, its proceedings are an absolute nullity and no rights are created by them, and they may be pronounced void when collaterally attacked. *People* v. *Sterling,* 357 Ill. 354; *Miller* v. *Rowan,* 251 Ill. 344; *People ex rel. Raymond* v. *Talmadge,* 194 Ill. 67.

There are two classes of fraud to be considered in cases of this character, the presence of one of which may be a basis for relief. In the *Sterling case* it was said: "First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment and other chicanery. The first variety of fraud will invalidate the decree, rendering it an entire nullity. On the other hand, it is well established that the second class has no such legal effect."

Also, *Foutch* v. *Zempel,* 332 Ill. 192; *Beck* v. *Lash,* 303 Ill. 549; *Evans* v. *Woodsworth,* 213 Ill. 404; *Burton* v. *Perry,* 146 Ill. 71; *Caswell* v. *Caswell,* 120 Ill. 377.

Plaintiffs contend that the acts of the master in chancery led the court to approve a sale which had never been made, that the fraud thus practiced gave the court only colorable jurisdiction to enter such order of approval. Such contention does not distinguish between failure of jurisdiction of the subject matter and the entering of an erroneous order based upon false facts. The court had jurisdiction over the matter of foreclosure of mortgages and this included the approval of a report of sale and report of deed. The court acted in the exercise of its jurisdiction upon such matters, but, by reason of the false facts that were included in the report, erroneously approved a sale which should not have been approved. It was an erroneous order, but the subject matter acted upon was within the court's jurisdiction. Plaintiffs are not entitled to the relief asked for in the first alternative of their prayer.

This is not placing the stamp of approval upon the conduct of the master in the making of the sale and reporting it to the court. The decree of foreclosure ordered him to make the sale, prescribed the notices and gave him other directions. It was the charter of his power and it was his duty to execute it accordingly. When H. Glen Wood bid the sum of $800 and the master declared the property sold to him, that constituted an offer on the part of Wood to pay that price for the premises and all it needed to complete it was approval of the court. It was the master's duty to report that sale and Wood's default in paying the purchase price to the court. Had such report been made, the court could then have ordered another sale and commenced summary action against H. Glen Wood to protect the interested parties against loss. The other parties interested in having the land sell for the best pos-

sible figure were interested in having their right to proceed against Wood preserved by a proper report from the master. The master had no authority to substitute the bank in lieu of Wood as the highest bidder and issue a certificate of purchase upon the bank's bid of $782.80. No doubt if the matters now shown had been called to the attention of the court in a direct proceeding, the master's report would not have been approved. The only excuse the master gives for not reporting it to the court is the claim that he explained the matter to one of the judges in a private conversation. Of course such excuse can not be given consideration on this question. The court had jurisdiction over the subject matter and was led to approve a report which was false as to the facts reported. Plaintiffs are not entitled to relief in this action by proof of fraud of that character.

Plaintiffs rely on cases such as *Armstrong* v. *Obucino*, 300 Ill. 140; *Quick* v. *Collins*, 197 Ill. 391; and *Welch* v. *Louis*, 31 Ill. 446. The *Armstrong case* was an action under the Mechanic's Lien Act to declare a lien in favor of the plaintiff for material which had been used in the improvement of defendant's property pursuant to a contract. The decree fixed the amount due and directed the master in chancery to sell if the same was not paid. The sale was to be made subject to redemption and the decree set forth the details as to the sale and right of redemption according to the statute as it existed prior to July 1, 1917. The act under which the sale was directed had been amended in 1917 and the decree directed a sale contrary to the provisions of such amendment. It was held that the sale and all the proceedings following it were void, and this was necessarily so for the reason that the jurisdiction of the court to direct a sale and prescribe its terms was provided by statute and the court had no jurisdiction to enter a decree which transcended the statutory provisions. In *Quick* v. *Collins*, 197 Ill. 391, the attack

upon the master's conduct and report of sale arose on objections to the master's report. This constituted a direct attack and is not authority in this kind of action. In *Welch* v. *Louis,* 31 Ill. 446, it was held that the court was without jurisdiction to proceed in the manner complained of and that all orders entered in the course of such proceeding were void. Such cases are not applicable to this character of action.

As has been stated, the sale reported to the court would have been vulnerable to attack in a direct proceeding but in considering plaintiffs' right to redeem, the sale appearing in the records of the court must be accepted as valid. There are two propositions to consider in reference to plaintiffs' right to redeem, namely: (a) did the statutory period of redemption run before plaintiffs started this suit, and (b) if the statutory period had run, have plaintiffs shown facts which would warrant a court of equity in granting them right to redeem after the statutory period had expired?

Section 18 (Ill. Rev. Stat. 1941, chap. 77, par. 18,) provides that any defendant, his heirs, legal representatives, or any person interested in the premises through or under the defendant, may redeem within twelve months "from said sale," and section 20 of the act provides that any decree or judgment creditor may redeem after the expiration of twelve months and within fifteen months "after the sale." Plaintiffs contend there was no sale until the court approved it and that there was no approval until June 10, 1941, which was within ninety days of the time when this suit was started. It is not necessary in this case to determine whether a statutory period of redemption begins to run the day the sale is made or the date that it is approved, for in this case the master's deed was approved January 10, 1938, and if court approval was necessary to start the running of the statute, that order contained implied approval of the master's report of sale

which had been on file since October 1, 1936. The approval of the report of conveyance cured all irregularities that preceded and which appeared on the face of the record. (*Speck* v. *Pullman Palace Car Co.* 121 Ill. 33; *Davies* v. *Gibbs,* 174 Ill. 272; *Barnes* v. *Henshaw,* 226 Ill. 605.) With the time computed either from date of sale or from order of approval, the statutory redemption expired long before plaintiffs tendered the master the necessary amount to redeem.

The law is well settled that a court of equity may on proper showing allow redemption upon equitable terms after the statutory period for redemption has expired, (*Block* v. *Hooper,* 318 Ill. 182; *McDaniel* v. *Wetzel,* 264 Ill. 212; *VanGundy* v. *Hill,* 262 Ill. 162,) but the showing here does not warrant such action. There was no showing of fraud or unfairness that prevented plaintiffs from redeeming within the statutory period. The conduct of the master in making his report of sale did not prevent plaintiffs from redeeming from the sale. Oftentimes inadequacy of price coupled with fraud or other irregularities has been held to be sufficient to warrant additional redemption rights, but in this case there was no evidence as to the value of the property, and in the absence of evidence it must be assumed it sold for what it was fairly and reasonably worth. There is a statement in one of the briefs that it is now of great value presumably from the development of oil wells, but this cannot be given consideration, for there is no evidence to sustain it, and the inference is that such enhancement in value, if any, accrued after the sale and after the bank acquired its deed. Plaintiffs have no right to redeem.

For the reasons stated, the decree of the circuit court was correct and is affirmed.

*Decree affirmed.*