(No. 29452.—                No. 29453.—

THE STATE LIFE INSURANCE COMPANY *et al.*, Appellants, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Appellees.—FIDELITY TRUST COMPANY, Trustee, Appellee, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*—(SECOND NATIONAL BANK OF MONMOUTH *et al.*, Appellants.)

*Opinion filed May 21, 1946—Rehearing denied September 16, 1946.*

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, and ALBERT E. JENNER, JR., of counsel,) all of Chicago, for appellant State Life Insurance Company *et al.;* HOWARD B. BRYANT, and LEONARD C. MEAD, both of Chicago, for appellant Second National Bank of Monmouth.

RICHARD S. FOLSOM, (FRANK S. RIGHEIMER, FRANK R. SCHNEBERGER, and JAMES W. COFFEY, of counsel,) all of Chicago, for appellee Board of Education; HENRY O. NICKEL, and ALEX ELSON, both of Chicago, for appellee Fidelity Trust Co.

Mr. JUSTICE SMITH delivered the opinion of the court:

Cause No. 29452, is an appeal by the plaintiffs from a decree of the superior court of Cook county, dismissing their complaint for want of equity. Cause No. 29453, is an appeal by certain individuals and corporations from a

judgment of the superior court of Cook county, awarding the writ of *mandamus* against the Board of Education of the city of Chicago. The appellants in cause No. 29453 were not parties to the suit. They describe themselves in their notice of appeal as persons whose interests are adversely affected by the judgment appealed from. Second National Bank of Monmouth also prosecuted a separate appeal from the judgment. The two cases were heard, considered and decided together by the trial court. They have been consolidated in this court. Both suits involve the question of the distribution of certain tax funds in the hands of the treasurer of the Board of Education of the city of Chicago, applicable to the payment of tax anticipation warrants issued by the Board of Education against taxes levied for educational, building and playground purposes, in the year 1929. A brief history of the anticipation warrants and the prior litigation concerning them, will be helpful to an understanding of the questions involved.

In the year 1929, after the Board of Education had made its tax levies, it issued and sold tax anticipation warrants against the taxes levied for educational purposes in the amount of $46,800,000; against the taxes levied for building purposes in the amount of $15,900,000, and against the taxes levied for playground purposes in the amount of $475,000. No question is raised as to the validity of the warrants so issued. After the levies were made and the anticipation warrants issued, the State Tax Commission ordered a reassessment of property in the city of Chicago, for the purpose of taxation. The reassessment was not completed until 1931. Because of the delay in completing the reassessment, the extension of the taxes was, necessarily, correspondingly delayed. A large amount of interest accrued on the outstanding warrants before the tax levies were finally extended and the taxes placed in collection.

All of the anticipation warrants issued were identical, except for the taxes anticipated, the dates of the warrants, serial numbers, denominations and stated dates of payment. Of the warrants so issued, there remains outstanding and unpaid, $7,104,000, issued against the educational fund; $2,902,000 against the building fund, and $65,000 against the playground fund. As of June 20, 1945, there was in the treasury, $486,643.43 of funds applicable to the payment of warrants issued against taxes levied for the educational fund; $164,667.82, applicable to the payment of warrants issued against taxes levied for the building fund, and $4,955.93 applicable to the payment of warrants issued against taxes levied for the playground fund. There were also at that time substantial amounts of the taxes levied for the various funds, which were uncollected. All other funds collected from the 1929 tax levies, applicable to the payment of anticipation warrants, have been applied to the payment of such warrants, and are not here involved.

In 1935, Norfolk & Western Railway Company commenced a suit in equity in the District Court of the United States for the Northern District of Illinois against the Board of Education. Up to that time the board had redeemed and paid anticipation warrants in their numerical order out of the funds collected from the taxes anticipated. By the decree in that case, the Board of Education was enjoined from paying out any money received as the proceeds of taxes extended for educational and building purposes, levied in the year 1929, except upon a prorata basis, to the holders of all outstanding warrants. (*Norfolk & Western Railway Co.* v. *Board of Education*, 14 Fed. Sup. 475.) On appeal, the Circuit Court of Appeals for the Seventh Circuit, ordered the decree modified so as to also direct the issuance of a mandatory injunction directing the distribution of taxes collected and on hand, or thereafter collected, on a prorata basis. (*Board of Education* v.

*Norfolk & Western Railway Co.* 88 Fed. 2d 462.) On May 19, 1937, the decree was modified by the district court, as directed. The decree, as modified, directed the distribution of the funds on hand and all funds thereafter received, applicable to the payment of the warrants, *pro rata.* It also enjoined the distribution of the funds in any other manner. By the decree an accounting was ordered. The cause was referred to a master to state the account. The suit is still pending on such reference. On July 13, 1937, a similar decree was entered by the District Court of the United States for the Northern District of Illinois, in a like suit filed by Union Trust Company against the Board of Education. Thereafter, the board, in compliance with these decrees, distributed the funds on hand *pro rata* to all of the warrant holders. The amounts distributed were received and accepted by all warrant holders as partial payments. The credits were endorsed upon the warrants at the time such payments were made.

From 1936 to 1939, seventeen other similar suits were brought by various warrant holders, in the circuit and superior courts of Cook county, against the Board of Education, praying for decrees against the board, directing distribution of the 1929 tax funds, applicable to the payment of anticipation warrants, *pro rata.* Such decrees were entered. The plaintiffs in the several cases, including those in the Federal Court, were the holders and owners of 96 per cent of all the outstanding building fund warrants, 95 per cent of the outstanding educational fund warrants, and 100 per cent of the playground warrants. By the decrees in those cases, the Board of Education was ordered to distribute the funds on hand, and all funds thereafter collected, on a prorata basis, to all warrant holders. The decrees entered by the Federal court and those entered by the State courts also entered money judgments against the Board of Education and in favor of the several plaintiffs, for the respective prorata amounts which

the plaintiffs would have received from the prior distribution of taxes collected, had such taxes been distributed on a prorata basis.

The record shows that under these various decrees, and in compliance therewith, the Board of Education distributed *pro rata* to the various warrant holders, from the educational fund $2,290,916.88; from the building fund $768,346.85, and from the playground fund $31,127.95, in payments on the principal of the outstanding warrants. In addition to the above amounts, the board likewise distributed, in the same manner, and from the same funds, large sums for the payment of accumulated interest on the warrants. In so far as these decrees entered judgments against the Board of Education to be paid by taxation, we sustained a decree in a suit brought by a taxpayer enjoining the enforcement of such judgments. (*Leviton v. Board of Education,* 385 Ill. 599.) Subsequently we held that all of such decrees were, to that extent, void and unenforceable. (*Chicago City Bank and Trust Co. v. Board of Education,* 386 Ill. 508; *People ex rel. Reconstruction Finance Corp. v. Board of Education,* 386 Ill. 522.) No appeals were taken from that part of any of the decrees directing the Board of Education to distribute the funds *pro rata.* In this respect, such decrees are final and are still in full force and effect.

The order in which payment of anticipation warrants, issued against the same fund, may be lawfully made, was first passed upon by this court on January 17, 1945, in *Lubezny v. Ball,* 389 Ill. 263. It was there held that under the statute such warrants must be paid in the numerical order of the warrants and not *pro rata.*

The complaint in cause No. 29452, was filed in November, 1944, by The State Life Insurance Company, and more than one hundred other owners and holders of outstanding unpaid warrants issued to anticipate the collection of the 1929 taxes levied for educational, building and playground

purposes. The complaint was filed by the above plaintiffs as a class or representative suit, on their own behalf, and on behalf of all other holders and owners of outstanding warrants, issued to anticipate the 1929 taxes. The prayer of the complaint was that an accounting be taken and that the Board of Education be decreed to distribute all funds on hand and all funds thereafter collected, applicable to the payment of such warrants, *pro rata* to all warrant holders. Thereafter, approximately one hundred other like holders of such warrants, upon leave granted, intervened and joined in the prayer of the complaint. The Board of Education of the city of Chicago, and the President of said Board, also the Comptroller, Treasurer and Deputy Treasurer, of the city of Chicago, as *ex-officio* officers of the Board of Education, were named as defendants. While the Board of Education and its officers were the only defendants named in the suit, no relief was asked requiring the levy of taxes or the use of tax money other than the funds in the hands of the treasurer of the school board, applicable solely to the payment of the outstanding warrants. The only relief asked was that the Board of Education and its Treasurer be directed to distribute such funds as were then on hand, or which might thereafter be collected, applicable to the payment of anticipation warrants, issued against the taxes levied for the educational, building and playground funds, in the year 1929, *pro rata.*

The defendants answered, admitting the material facts alleged. They averred that the School Board desired to make distribution of the funds on hand, and asked for instructions as to whether the money should be distributed *pro rata,* as prayed in the complaint, or should be paid to the holders of the warrants according to the numerical order of the warrants. Plaintiffs replied that the distribution of the funds on any other than a prorata basis would deprive them of their property without due process of law and would impair the obligations of the contract among

the holders of warrants, and deny to such holders the equal protection of the laws, in violation of the State and Federal constitutions. Upon a hearing a decree was entered dismissing the complaint for want of equity. This appeal, in which all of the plaintiffs joined, followed. A direct appeal was prosecuted to this court on the alleged ground that the dismissal of the complaint denied to plaintiffs certain constitutional rights asserted in their complaint and reply, and in the points stated as the propositions relied upon for a reversal of the decree.

At the threshold of the inquiry in cause No. 29452, we are met with the question of whether the action can be maintained as a class or representative suit. It is unquestionably the rule that in equity the interests of parties not before the court will not be bound by the decree. This rule, however, is subject to the well-recognized exception growing out of convenience and necessity in the administration of justice, out of which what is known as the doctrine of representation arose. Under this doctrine, where it appears that parties, although not before the court in person, are so represented by others who are before the court that their interests will receive actual and efficient protection, the decree may be held to be binding upon such absent parties. In such cases it must appear that the absent parties stand in the same situation as the parties before the court, and that they have a common right or interest with them, the operation and protection of which will be for the common benefit of all and cannot be to the injury of any. In order to apply this doctrine, there must be persons who are parties to the suit who, with reference to the interests in question, are equally certain to bring forward the entire merits of the questions involved in order that the object for which the presence of the actual owner is ordinarily required may be satisfied. (*Weberpals* v. *Jenny,* 300 Ill. 145; *McCampbell* v. *Mason,* 151 Ill. 500.) Those cases where the right to maintain an action as a class or

representative suit has been sustained are cases where all members of the class had a common interest in the questions involved and in the results to be obtained. *Peoples Store of Roseland* v. *McKibbin,* 379 Ill. 148.

The number of the holders owning outstanding unpaid warrants does not appear. The record shows, however, that there are many of such holders who are not parties to the suit. As already indicated there are only about two hundred of such holders who have actually appeared as parties to the suit. It must be assumed, therefore, that there is a substantial number who are only vicariously represented by the named plaintiffs and intervenors. The record does not show that the interests of the absent parties are in all respects the same as the interests of the named plaintiffs. Even though all the warrant holders are interested in the same fund, their interests in the method of the distribution of the fund are not the same. The question in controversy is the manner in which the common fund is to be distributed among the warrant holders. The fund is obviously insolvent. The warrants will not all be paid in full. Those whose warrants bear numbers low enough to bring them within the block of warrants which will be paid in full, if such warrants are paid numerically, are interested in that method of distribution of the funds. Those whose warrant numbers are such as to place them in a higher bracket, and who will receive nothing on a numerical distribution, are interested in a prorata distribution. If prorata distribution is ordered, those warrants whose numbers place them in the lower bracket will receive less than they would receive if the warrants were paid in numerical order. If the warrants are paid numerically, so far as the funds extend, those in the higher brackets will receive nothing. The sole controversy in the case is the method in which the fund is to be distributed among the several claimants. If the warrants are to be paid in numerical order, so far as the question of distribu-

tion is concerned every warrant holder is potentially in a separate class. The class to which he belongs is determined by the serial number of his warrant. Every holder of a warrant with a number low enough to bring it within the block which would be paid in full, in the event the warrants are paid numerically, is entitled to litigate the method of distribution with every holder of warrants in a numerically higher bracket who insists upon a prorata distribution. Clearly, as to the distribution of the fund, there is a potential conflict of interest between every holder of warrants with every other such holder. They have no common interest in the question of the method of distribution. It cannot be said that the interests of the absent warrant holders whose warrants are within the bracket which would be paid in full, if the warrants are paid in numerical order, will be properly litigated and protected by the named plaintiffs whose warrants may all be in a higher bracket on which no payment will be made unless the funds are distributed *pro rata*. Conversely, it cannot be said that the interests of the absent holders of warrants numerically in a higher bracket, on which no payments will be made if prorata distribution is not ordered, will be properly litigated and protected by the named plaintiffs who are interested only in the distribution of the funds in the numerical order of the warrants. Because of the dual and potentially conflicting interests, it is impossible to say that all of the warrant holders are members of the same class. And, as said in *Otto* v. *Alexander,* 383 Ill. 482, quoting from *Hansberry* v. *Lee,* 311 U. S. 32, nor "with the due regard for the protection of the rights of absent parties which due process exacts, can some be permitted to stand in judgment for all."

The interests of the several warrant holders in the distribution of the funds involved not being a common interest, but highly controverted and controversial as between such holders, the suit is not one which may be main-

tained as a class or representative suit. The named plaintiffs had no right to maintain the suit in behalf of the absent warrant holders. Until such absent warrant holders are properly brought before the court, either as plaintiffs or defendants, the court could not properly proceed in the cause. *Oglesby* v. *Springfield Marine Bank,* 385 Ill. 414.

In cause No. 29453, the complaint was filed by Fidelity Trust Company as plaintiff. In that complaint the same defendants named in cause No. 29452, except the president of the school board, were named as defendants. The complaint, after alleging that the Board of Education had certain funds on hand applicable to the payment of warrants issued to anticipate the collection of taxes levied in 1929 for building purposes, which were owned by the plaintiff, alleged that the board should pay the outstanding warrants in numerical order and not prorate the funds among all warrant holders. The prayer of the complaint was for a writ of *mandamus* commanding the Board of Education to pay such warrants in numerical order. An answer was filed by the defendants to which the plaintiff filed a reply. Second National Bank of Monmouth was permitted to intervene and file an answer. The plaintiff also filed a reply to this answer.

As already observed, the two causes were heard together by the trial court. Judgment was entered awarding the writ of *mandamus* as prayed. The appellants who were plaintiffs in cause No. 29452 were not parties defendant in cause No. 29453. However, Second National Bank of Monmouth was a party and by its answer set up the defense that the former decrees already referred to constituted an adjudication; that the plaintiff in this case was estopped to now claim the warrants should be paid numerically for the reason that the warrants now owned by the plaintiff are the same warrants owned by the plaintiff in the case of *Union Trust Co.* v. *Board of Education,* at the time the decree in that case was entered. This defense

having been pleaded and urged in the court below, it may be asserted here by the appellants who are not parties to the suit, as well as by the separate appellant. The record shows that the interests of the appellants who were the plaintiffs in cause No. 29452 were adversely affected by the judgment awarding the writ of *mandamus* against the Board of Education in cause No. 29453.

The facts are not in dispute. It is contended by the appellants that all of the holders of outstanding warrants issued against the respective levies who filed the former suits asking for prorata distribution of the proceeds of the collections of the respective tax levies, and all of such warrant holders who did not join in such suits but who have accepted prorata distributions pursuant to the decrees entered in said suits, are now estopped from insisting upon the payment of the warrants in numerical order; that to permit them to do so would result in the unjust enrichment of the plaintiff in cause No. 29453, to the disadvantage of other warrant holders, and prejudice such other holders of outstanding warrants. It is further contended that said prior decrees were obtained in suits brought by 96 per cent of the holders of the building fund warrants, 95 per cent of the educational fund warrants, and 100 per cent of the playground warrants, and constitute an adjudication and a bar as against the Board of Education and against all warrant holders claiming a preference in the payment of the warrants held by them; that they cannot relitigate the question and now ask the court to direct that the warrants be paid in numerical order; that the rights of all warrant holders are conclusively fixed by said former decrees, and that such warrant holders having induced the various courts to enter said decrees for prorata distribution, and having accepted such distribution, are barred from now asking the court to direct the Board of Education to distribute the funds in the numerical order of the warrants.

Appellee contends that under the decision of this court in *Lubezny* v. *Ball,* 389 Ill. 263, the Board of Education can lawfully pay the warrants only according to numerical order, and that the board should be compelled to make distribution of the funds on hand and those to be hereafter collected, in accordance with the numerical order of the warrants.

The record shows that on July 18, 1936, Union Trust Company of Pittsburg, as trustee under a trust created by William L. Mellon, on May 11, 1932, filed a suit against the Board of Education of the city of Chicago in the District Court of the United States for the Northern District of Illinois. In the complaint in that suit it was alleged that the plaintiff was the owner of one hundred eighteen warrants of the aggregate face value of $590,000, issued against taxes levied for building purposes, being Nos. B-4946 to B-5030, inclusive, and B-5172 to B-5204, inclusive. It was also alleged that the plaintiff was the owner of fifty warrants of the aggregate face value of $250,000, issued against the taxes levied for educational purposes, being Nos. E-4360 to E-4409, inclusive. On July 13, 1937, a decree was entered in said cause. By that decree it was provided, "that said defendants, and each of them, and all persons acting under, through, by or on behalf of them, or either of them, or claiming so to act, or having power to act under the authority, direction or control of said defendants, or any of them, be, and they are hereby, permanently and perpetually enjoined, restrained and prohibited from using, employing or paying out, funds, or part or parts thereof, now in the hands of the city treasurer of the city of Chicago, or that may hereafter come into his hands and custody, or any part or parts thereof, derived, or that may hereafter be derived, from taxes levied and collected for the year 1929, for school educational purposes or school building purposes, in the

payment of outstanding and unpaid tax anticipation warrants drawn and issued against said respective tax levies, in their numerical order, or in any order or manner except upon a prorata basis, equally and ratably as to said respective levies, and without priority or preference in the payment of said warrants." By the decree it was ordered that the plaintiff was entitled to an accounting against the defendants "for all moneys at any time received" by them from the 1929 tax levies for educational and building purposes. It was further decreed that the plaintiff have and recover of and from the Board of Education its prorata share of all moneys at any time received by it as the proceeds of the tax levies for the year 1929 for educational and building purposes.

On April 15, 1942, on motion of Fidelity Trust Company reciting that it had succeeded the Union Trust Company as trustee under the Mellon Trust, it was substituted as party plaintiff in that cause. The record shows that the warrants owned by the Union Trust Company, and which were involved in that suit, were the same warrants now owned and held by Fidelity Trust Company as successor trustee, the plaintiff in this case, and on which it bases its present action.

It further appears that subsequent to the entry of that decree and other similar decrees, already referred to, and acting under the mandates of those decrees, the Board of Education distributed the funds on hand *pro rata* to all warrant holders. Subsequent distributions of funds received from taxes after the decrees were entered have been made on the same basis. Prior to the entry of those decrees, the board had paid the warrants in numerical order as funds were available.

On February 2, 1945, the Board of Education filed, in the suit in the Federal Court, a motion to vacate the decree entered on July 13, 1937, under the holding of this court

in *Lubezny* v. *Ball,* 389 Ill. 263. This motion was opposed by Fidelity Trust Company, the plaintiff in said cause, and also plaintiff in cause No. 29453. On June 20, 1945, the motion was denied. As already pointed out, the board paid out and distributed *pro rata,* under these decrees, to all warrant holders an aggregate sum in excess of $3,000,000.

In the *Union Trust Co. case* in the Federal court, the sole issue involved between that company and the Board of Education was whether the funds on hand and the funds thereafter collected from the 1929 tax levies for educational and building purposes, and applicable to the payment of anticipation warrants, should be distributed according to the numerical order of the warrants, or *pro rata* to all warrant holders. That issue was decided by the decree entered. The plaintiff here is the successor in title to the warrants owned by the plaintiff in that case, at the time the decree was entered, and which constituted the basis for that suit. On its own motion, it was substituted as plaintiff in that cause. It filed an amendment to the complaint by which it adopted the pleadings and decree theretofore filed and entered in that cause. By the complaint filed in this case, Fidelity Trust Company alleges that it is the owner of the same one hundred eighteen warrants issued against taxes levied for building purposes, being Nos. B-4946 to B-5030, inclusive, and Nos. B-5172 to B-5204, inclusive.

As successor in title to the warrants owned by the plaintiff in the *Union Trust Company case,* which are the same warrants described in the complaint as belonging to the plaintiff in this case, and which constitute the sole basis for this suit, it is, in this case in which it is now the plaintiff, bound by the decree in that case. By that decree the Board of Education was "permanently and perpetually enjoined, restrained and prohibited" from paying out or distributing any funds then in its hands, applicable

to the payment of warrants issued against taxes levied for educational and building purposes in the year 1929, and any of such funds thereafter collected or received by it, "except upon a prorata basis, equally and ratably" without "priority or preference in the payment of said warrants." The decree then provided that the plaintiffs have and recover from the Board of Education "its prorata share" of all money at any time received by the Board of Education as the proceeds of such 1929 tax levies. The cause was then referred to a master to take and state the account, under and in conformity with the decree. The only account involved and necessary to be stated was the amount to which the plaintiff would be entitled, of the funds theretofore distributed and paid out according to the numerical order of the warrants, if such funds had been distributed *pro rata* to all warrant holders, so as to ascertain and fix the amount for which judgment was entered.

That this is a case in which the doctrine of *res judicata* should be applied is clearly established. The two suits were between the same parties and their privies in ownership and title. They involved the same warrants and the identical subject matter. The sole question decided was the same in each case.

The suit in the Federal Court was a controversy between the Mellon Trust, acting through its trustee, and the Board of Education, as to the method in which the funds received from the 1929 tax levies should be distributed among the several holders of the outstanding tax anticipation warrants. The present action is a like controversy between the Mellon Trust, acting through its trustee, and the Board of Education, as to the method in which the same funds, derived from the same source, and for the same purpose, shall be distributed among the same warrant holders. There is, therefore, identity of parties and subject matter, as well as of the questions involved.

The decree entered by the Federal Court was a final decree. A final decree was defined in *Eich* v. *Czervonko*, 330 Ill. 455, as follows: "A final decree is one which fully decides and finally disposes of the merits of the case though incidental matters may be reserved for consideration. A decree is final though as an incident to the relief granted it directs a reference to a master to state an account where an account is to be settled between the parties, and the rules and principles on which the account is to be made are fixed by the decree." In support of the rule there announced, the court cited *Gray* v. *Ames,* 220 Ill. 251; *Allison* v. *Drake,* 145 Ill. 500; *Hunter* v. *Hunter,* 100 Ill. 519, and *Myers* v. *Manny,* 63 Ill. 211.

The Federal Court had jurisdiction of the parties and of the subject matter. Its decree is *res judicata* of the only question here involved, which was the only question involved in the suit in the Federal Court. (*City of Elmhurst* v. *Kegerreis,* 392 Ill. 195; *Ohio Nat. Life Ins. Co.* v. *Board of Education,* 387 Ill. 159.) A final decree is not necessarily the last order in a cause. Orders sometimes follow for the purpose of carrying out the decree. When a decree finally fixes the rights of the parties it is final. An accounting under an order of reference is in the nature of an execution of the decree and does not prevent the decree from being a final decree. *Bennett* v. *Weber,* 323 Ill. 283.

The fact that the Federal Court, in the entry of its decree, misconstrued the law of Illinois as to the order in which tax anticipation warrants should be paid makes no difference. It had jurisdiction of the parties and of the subject matter, and however erroneous its decree may have been, it is binding upon the parties until reversed or set aside in a direct proceeding on review. *Wood* v. *First Nat. Bank,* 383 Ill. 515.

The law very properly gives to every litigant a day in court, but litigation ought not to be encouraged, and when

a matter has been once litigated and decided by a court of competent jurisdiction, that matter cannot again be brought into litigation between the same parties, or their privies, but the judgment or decree first rendered will be held conclusive as between the parties. This rule has been applied to judgments and decrees rendered in the Federal Courts, and such decrees and judgments have been properly held to be a bar to a subsequent action involving the same subject matter and issues in the State courts. *Knowlton* v. *Hanbury,* 117 Ill. 471.

Aside from the question of the former adjudication by the prior decree, we need not stop to consider whether the rule of estoppel may be invoked in an action at law for *mandamus.* The writ is not granted as a matter of absolute right. (*Jones* v. *Clark,* 355 Ill. 527; *People ex rel. Carlstrom* v. *Shurtleff,* 355 Ill. 210.) The court, in the exercise of wide judicial discretion, may, in view of consequences, refuse the writ. *People ex rel. Reconstruction Finance Corp.* v. *Board of Education,* 386 Ill. 522; *Stockholm* v. *Daly,* 374 Ill. 441; *Raclin* v. *Village of Winnetka,* 369 Ill. 532.

In order to demonstrate the injustice of permitting the plaintiff in cause No. 29453 to change its position as to the method in which the warrants should be paid, and to relitigate that question, we only need refer to the result which would follow. The record shows that the plaintiff, Fidelity Trust Company, owns and holds eighty-five building fund warrants which are next in the order of the numbers of the unpaid outstanding warrants. If the warrants are paid in numerical order, the first nineteen of these warrants on which there is $95,000 in principal due, less the prorata distribution heretofore made, and approximately $70,000 in interest, will exhaust all the money on hand in that fund. The payment of the remaining sixty-six warrants of the first block which it holds, of the face

value of $330,000, and approximately $220,000 of interest accumulated thereon, the record indicates, will probably exhaust all the funds which will ever be realized from the taxes levied for building purposes. Moreover, since the filing of the suit in 1936 in the Federal Court, nearly $250,000 of interest has accrued on the warrants now held by it. Had it accepted payment of its warrants in numerical order, as funds were available, such interest would not have accumulated during the nine years since the entry of the decree in the Federal Court, but the funds used to pay such interest would have been available to pay the holders of warrants next in order of number. By the delay, Fidelity Trust Company, if the warrants are paid in numerical order, will receive the large amount of accumulated interest which it would not have received had it, or its predecessor in title, taken the position in 1937 it now takes. In addition to the eighty-five low numbered warrants of the first block which it holds, the record shows that it holds a second block of thirty-three building fund warrants bearing higher numbers, of the aggregate face value of $165,000. Subsequent to the entry of the decree in the Federal Court, the record shows it has received $52,800 in prorata distributions on account of this second block of higher numbered warrants, whereas, it would have received nothing on account of these warrants had the funds been distributed according to the numerical order of the warrants. The record further shows that in addition, it holds $250,000 of educational fund warrants, the numbers of which are so high that no payments would ever be made thereon, if the warrants are paid in numerical order. Under the prorata distribution, however, under the decree, it has already received $110,000 on these warrants. Thus it has received, as a result of the decree of the Federal Court for prorata distribution, in addition to some $250,000 in interest, $52,800 paid on its second block of

building fund warrants and $110,000 on its educational fund warrants, which it never would have received or been entitled to had the funds been distributed in the numerical order of the warrants. This, of itself, is sufficient to compel the court to refuse to grant the writ of *mandamus.*

Moreover, the plaintiff, by the suit in the Federal Court, submitted itself and the subject matter of the controversy to that court and is bound by its decree. That decree is final and binding upon the parties to this cause. The plaintiff in this case and its predecessor in title, having obtained a mandatory injunctional decree in the Federal court to compel the Board of Education to distribute the funds *pro rata,* which decree has become final and has been partially executed, now seeks a writ of *mandamus* to compel the board to distribute the funds according to the numerical order of the warrants, which is directly contrary to that decree.

The writ in this case would also be properly denied under the well-settled rule that courts will not issue writs of *mandamus* which can result in no benefit to the parties asking them. (*People ex rel. Bass* v. *Jeffers,* 186 Ill. 631.) Another rule of law is that the writ of *mandamus,* which is awarded only in the discretion of the court, will not be issued where it would create disorder or confusion. *People ex rel. Bruce* v. *Dunne,* 258 Ill. 441; *Kenneally* v. *City of Chicago,* 220 Ill. 485; *People ex rel. Stettauer* v. *Olsen,* 215 Ill. 620.

As the matter now stands, Fidelity Trust Company has a final decree in the Federal court, under which the school board is perpetually enjoined from distributing the funds, except upon a prorata basis. That decree also contains a mandatory injunctional order directing the Board of Education to pay out all funds at any time received by it from the 1929 tax levies for educational and building purposes on a prorata basis. The judgment in this case awards a

peremptory writ of *mandamus* by which the Board is directed to pay out and distribute all of such funds in the numerical order of the warrants. This decree and the judgment in this case are in direct conflict. After having accepted and enjoyed the beneficence of the decree for prorata distribution, however erroneous that decree may have been, until it has received more than $160,000 on its warrants bearing such high numbers that it would never have received or been entitled to anything on such warrants had the funds been distributed according to the numerical order of the warrants, and some $250,000 of interest which would never have accrued had it accepted numerical distribution in the first instance, it now seeks by the writ of *mandamus* to appropriate all of the funds which will ever be available, in payment of its warrants in numerical order. A situation which would permit or countenance such vacillating trifling in the administration of justice cannot be tolerated. The Supreme Court of Georgia, in *Board of Education* v. *Day,* 128 Ga. 156, 57 S. E. 359, pertinently observed that if a litigant "may change his mind once after having assumed and thus declared his position and based his suit upon it, why may he not do so again? And where is the limitation upon decision and re-decision, selection and re-selection, and vacillation between inconsistent positions and remedies, as it may appear to the litigant from time to time that his chances are better in one direction or the other? Can he be allowed to swim hither and thither in a sea of legal uncertainty until he has been transfixed by the harpoon of a final judgment?" The proceedings here, if approved, would go even further. They would forestall any such transfixing by obtaining conflicting final judgments in different courts of equal jurisdiction over both the parties and the subject matter.

The unusual situation shown by the record in this case is such that justice requires that the decree in cause No.

29452, be reversed. That decree is reversed and the cause is remanded to the superior court of Cook county, with directions to permit the plaintiffs, if they so elect, to amend their complaint and to make additional parties, and for further proceedings not inconsistent with the views herein expressed.

In cause No. 29453, the judgment awarding the writ of *mandamus* is reversed.

> *No. 29452, Decree reversed and cause remanded.*
> *No. 29453, Judgment reversed.*

Upon petitions for rehearing, the following additional opinion was filed September 16, 1946.

Per. CURIAM : On petitions for rehearing it is urged by both the Board of Education and the Fidelity Trust Company that this court in its opinion misconceived the rule prevailing in the Federal courts as to the finality of decrees; that the decree of the Federal court, which the opinion holds is *res adjudicata* as to the manner in which the 1929 tax money shall be applied to the payment of outstanding tax anticipation warrants, was interlocutory and not final, and does not constitute an adjudication on that question. It is argued that under the Federal rule the cause is still pending in the Federal court on the order of reference and that court may, at any time prior to the entry of a decree on the accounting, modify or change the decree to conform to the law of Illinois as announced by this court, and that it is its duty to do so.

As pointed out in the opinion, by that decree the Board of Education was permanently enjoined from distributing any of the 1929 tax money then on hand or thereafter collected, except on a prorata basis. By the mandatory provisions of the decree the board was ordered and directed to distribute all such funds then on hand or thereafter collected in that manner. From the date that decree was entered until the opinion of this court in *Leviton* v.

*Board of Education,* 385 Ill. 599, was filed, more than six years later, all of the parties to the cause in which the decree was entered accepted and treated the decree as final. As such final decree they acted under it and conformed to all its provisions. All of the 1929 tax money on hand at the time the decree was entered and all of such funds thereafter collected were paid out by the Board of Education and accepted by the warrant holders under and in accordance with the decree.

On February 2, 1945, more than one year after this court had held in the *Leviton case* that no judgment could be lawfully entered, under the law of Illinois, against the Board of Education, for a wrongful diversion, by its officers, of tax funds, the board filed a motion in the case in the Federal court. By that motion it was alleged that the decree entered in 1937 was interlocutory; that the cause was still pending on the order of reference; that the decree was contrary to the law of Illinois as announced by this court in the *Leviton case;* that the Federal court was bound by that decision and that said decree should either be set aside or modified so as to conform to the law of Illinois. This motion was contested by some of the plaintiffs in that case. It was heard by the court and on June 20, 1945, denied.

On prorata distributions made under the decree, the Board of Education paid out large sums of the 1929 tax money to warrant holders who were not entitled to receive any of such funds if the warrants were paid in numerical order. Such funds were paid out under the mandates of the decree. They cannot now be recovered. As pointed out in the opinion, Fidelity Trust Company received, under the decree, more than $160,000 in payments on warrants held by it bearing such high numbers that nothing could have been paid on such warrants under a numerical distribution of the funds. It also received from the 1929 tax money more than $250,000 in interest payments which

would not have accrued had it accepted numerical distribution and not obtained the decree in the Federal court compelling distribution of the funds on a prorata basis.

By this suit Fidelity Trust Company seeks a writ of *mandamus* to compel the Board of Education to distribute the 1929 tax money to the payment of the outstanding warrants in numerical order, which would be a direct violation of the decree of the Federal court, which decree is still in full force and effect. This court will not affirm a judgment awarding a writ of *mandamus* directing a party to a decree entered by the Federal court to violate such decree. As to the manner in which the 1929 tax money shall be distributed and applied to the payment of the outstanding tax warrants, we adhere to the conclusions reached in the opinion, that the decree of the Federal court is final and constitutes an adjudication of that question which is binding upon all the parties to this cause, notwithstanding that decree is contrary to the law of Illinois. We adhere to the conclusions announced in *Lubezny* v. *Ball,* 389 Ill. 263, and in *Berwind, Inc.* v. *Chicago Park District,* 393 Ill. 317, as to the manner in which tax anticipation warrants must be paid.

As to that part of the decree awarding money judgments in favor of the plaintiffs and against the Board of Education for their several prorata shares of all funds paid out on warrants in numerical order prior to the date of the entry of the decree, and referring the cause for the purpose of taking the account and ascertaining the amounts for which such judgments should thereafter be entered against the board, it may be that under the rule prevailing in the Federal courts the decree is interlocutory and the cause *sub judice* as to that issue. If this be true, the Federal court is at liberty at any time to modify the decree in this respect so as to conform to the law of Illinois. These are questions for the Federal court to determine. They are questions which are not presented on this record

and with which we are not concerned in this case. We are not permitted to speculate or conjecture as to some suggested change or modification of the decree which the Federal court may or may not make at some future time. We can only determine the effect of the decree as entered and as it now exists. Particularly is this true where, as here, the Federal court has already denied a motion to make such changes and modifications in this decree.

A rehearing is denied.