(No. 30593.—

THE STATE LIFE INSURANCE COMPANY *et al.*, Appellees, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed September 24, 1948—Rehearing denied Nov. 11, 1948.*

RICHARD S. FOLSOM, (FRANK S. RIGHEIMER, FRANK R. SCHNEBERGER, and JAMES W. COFFEY, of counsel,) all of Chicago, for appellant the Board of Education of the City of Chicago; HENRY O. NICKEL, (HENRY CARLYLE NICKEL, of counsel,) both of Chicago, for appellant Fidelity Trust Co.; HOWARD B. BRYANT, LEONARD C. MEAD, and AVERN B. SCOLNIK, all of Chicago, for appellants Inland White Lead Co., *et al.;* GARDNER, MORROW, FOWLER & MERRICK, (WALTER M. FOWLER, of counsel,) both of Chicago, for appellants Marie Reuther Babbington *et al.*

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, and ALBERT E. JENNER, JR., of counsel,) all of Chicago, for appellees.

Per CURIAM: The State Life Insurance Company and others filed an amended complaint in the superior court of Cook County to determine and fix the rights of all holders of anticipation warrants drawn against the 1929 taxes levied for school purposes by the Board of Education of the City of Chicago. The facts are fully set out in 394 Ill. 301 and need not be repeated.

The relief prayed in said amended complaint was allowed by the superior court. Certain of the defendants appealed directly to this court because the revenue is involved.

This cause was before us and decided in 394 Ill. 301, where, by our opinion, we determined the rule that would apply to the disbursement of the remainder of the collections of the 1929 tax levy of the Board of Education of the city of Chicago. Certain parties to that litigation were not present before the court, although others with the same factual situation were present. Accordingly, after establishing the law applicable to the different claims of warrant holders, the cause was remanded to the superior court with leave to amend the complaint and bring before the court all parties interested in any of such school warrants issued for the 1929 taxes.

Upon remandment the complaint was accordingly amended and all parties brought in and a decree settling the manner of distribution of the proceeds of the taxes on hand made substantially as directed by the mandate and opinion of this court. In addition to fixing the manner of distribution, the court allowed and fixed a fee of five per cent of the amount of tax money disbursed under the decree to be paid to the attorneys for the plaintiff.

The problems presented by the 1929 school levy of the city of Chicago and the insufficiency of the amount of

taxes collected to pay all tax warrants had been before this court many times, and the last decision, *viz.:* *State Life Insurance Co.* v. *Board of Education,* 394 Ill. 301, was designed to furnish a rule for the distribution of such funds, which would end over fifteen years of litigation and allow the warrant holders to receive their respective shares of money promptly after the decree was entered by the superior court.

It appears that our opinion was either misunderstood, or a change in the factual situation was thought to warrant a departure from what we decided therein.

The *State Life case* (394 Ill. 301,) established and determined the effect of the decree of the United States court entered on July 13, 1937, as being *res judicata* of the proposition that the fund should be distributed pro rata instead of in accordance with the law of Illinois requiring payment in the order of the issuance of the warrants.

The case was not intended to, nor did it, change the Illinois rule, although the method of distribution as ordered by the United States court was applied to bring about equity in the distribution of the remaining money among all the warrant holders. The superior court followed our holding and a few of the several hundred parties appealed directly to this court, among which are the Board of Education of the city of Chicago, the Fidelity Trust Company, as trustee, the Inland White Lead Company, and Marie Babbington, whose contentions and claims will be respectively analyzed and determined.

The board of education appealed because it now says that the amount of money which it is ordered to distribute from the collection of 1929 taxes is incorrect because a part of the sums admitted to be in their hands is claimed to have been borrowed from other funds and that there has been intermingled in said funds the moneys from other collections than those from the 1929 school tax levy.

In their answers, computations and briefs in the prior appeal, the school board fixed the admitted collections of $486,643.43 from the educational fund; $164,667.82 from the building fund; and $4955.93 from the playground fund. We relied upon these computations and in our prior opinion, at page 304, we found these exact amounts from collections of the 1929 taxes were in the hands of the Chicago board of education subject to distribution from the appropriate warrants.

In the previous cases before this court, notably *Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508, and *Leviton* v. *Board of Education,* 385 Ill. 599, no intimation appears that there had been any commingling of taxes of other sources with the tax collections from the school funds levied in 1929.

The only difference of the amount of such funds collected from these 1929 taxes occurs from the different times at which the account was made, and no claim was made in the petition for rehearing upon the first appeal of this case that the amounts of tax collection on hand were derived from any other source or intermingled with any other fund. The contention of the school board comes too late, even if it were justified. The finding and fixing of the amounts for distribution is just as much a judgment of this court in the prior appeal as any other question determined therein.

The only other appellant contending for any different distribution of the fund in the hands of the treasurer of the school board is the Fidelity Trust Company, as trustee. The objections of other appellants are upon different grounds.

The Fidelity's contentions are confined to the distribution of the building fund because the building fund warrants held by it are next in order of serial numbers, and if the Illinois rule of distribution were followed their war-

rants would take all this fund and thus give them a preferential treatment over other claimants based upon a pro rata distribution.

In other words, the Fidelity takes the position that as to all warrants except the building fund warrants it will accept the judgment of the court on a pro rata basis because it would receive more that way, but as to those against the building fund, it wants the Illinois law of payment numerically because that will not only give it more, but exhaust the fund.

This position is highly inequitable. We have determined that the manner of distribution to be made by the board of education should be in accordance with the judgment of the United States court in order to equitably distribute a fund which will never pay in full.

The Fidelity strongly urges that since the United States District Court had, upon motion, set aside its order and decree of July 13, 1937, we are at liberty to order and distribute the fund in accordance with the law of Illinois. The Fidelity misapprehends the effect of the decision, not only of the United States Circuit Court of Appeals, but of our decision in 394 Ill. 301.

Our decision upon the prior appeal is *res judicata* against the right of the Fidelity Trust Company to claim a disbursement of the money available upon the warrants numerically. On the first appeal of the case the Fidelity Trust Company successfully claimed that the judgment of the United States court requiring payment pro rata was binding upon this court, although erroneous. The situation has arisen under which the Fidelity Trust Company would realize considerably more money and all of the building fund available if the correct State rule were followed.

Aside from the inequitable result following the position of Fidelity Trust Company, it is barred by our judg-

ment in 394 Ill. 301 from asserting in this case that the building fund money on hand should be distributed in accordance with the correct rule.

We followed the judgment of the United States Circuit Court of Appeals, though we believed it erroneous, because it had become *res judicata,* which applies to all judgments whether correct or otherwise. After our judgment and decree became final the Fidelity Trust Company procured an order setting aside the decree of the United States court ordering the money from these funds to be paid pro rata. This does not affect our ruling in 394 Ill. 301. The rule has been settled that where a judgment in one case has successfully been made the basis for the judgment in a second case, the second judgment will stand as *res judicata,* although the first judgment be subsequently reversed. *Reed* v. *Allen,* 386 U. S. 191, 76 L. ed. 1054; *Deposit Bank of Frankfort,* 191 U. S. 499, 48 L. ed. 276; *Gould* v. *Sternberg,* 128 Ill. 510.

The fact that the judgment of the United States court was vacated at the request and upon the motion of the Fidelity Trust Company does not change the rule, but rather gives additional reason for adherence to it.

The contention of the appellant, Fidelity Trust Company, is without merit.

The claims of Marie Babbington, and others in the same class, are based upon the provision in the decree that the amount remaining due upon warrants upon which judgments had been obtained should be considered as though the judgment had not been credited upon the warrant. The basis of this decree is that the judgments were void and the credit improperly given. The actual language of the decree is that the endorsements upon the tax anticipation warrants, upon which the lesser amounts were paid in the August 1, 1929, distribution, are without force or effect insofar as they recite partial payments of principal upon

said warrants, and a special finding was added to the effect that any endorsements so made were considered to have been made on account of interest.

The facts disclose that these particular appellants received $170 on each thousand-dollar warrant, while those upon which judgments were credited received much less, sometimes as little as ten dollars per thousand. There is no contention that this equalization of payments is not in accordance with equity and no showing is made how pro-rata distribution can be made as claimed by them unless such payments upon warrants shall be equalized.

The contention of the Inland White Lead Company and a number of others, including Babbington, that the allowance of solicitors' fees to the plaintiffs, to be paid out of funds collected, is contrary to equitable principles. They seem to take the position that since we held in a prior appeal that the case was not a representative suit because of the different interests, and the different funds against which the warrants are claimed, therefore the allowance of fees for the plaintiffs' attorneys is not proper.

Uusually the claim for solicitor's fees comes in representative suits, but such a rule is not universal. The leading case upon the subject is *Trustees* v. *Greenough*, 105 U. S. 527, which announced the rule as follows: "Where one of many parties having a common interest in a trust fund, at his own expense, takes proper proceedings to save it from destruction and restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by proportional contributions from those who accept the benefit of his efforts." And in *Sprague* v. *Ticonic National Bank*, 307 U. S. 161, it is held it is not necessary that the suit be a representative one to authorize the allowance of fees, and the opinion comments: "But when such suit is, for all practical purposes, created for the benefit of others, the formality of the litigation—the absence of an involved class suit, or the creation of the

fund as it were through stare decisis rather than through a decree—hardly touched the power of equity in doing justice as between a party and the beneficiary of his litigation."

The present case presents an outstanding example of the beneficial results arising from the efforts of plaintiffs' counsel. Here is a situation where the law of Illinois was directly contrary to the law announced by the United States court. Several million dollars in funds had been distributed in accordance with the rule laid down by the United States court before the question was formally presented to this court. If, after the funds had been paid out, a new rule of distribution of the same fund had been followed without requiring those who had received money upon the United States court basis to be charged with it, they would have received a second dividend to the detriment of others who had received nothing, or at least a smaller percentage.

The facts presented in the original complaint disclosed a situation where equity, among the many thousands of warrant holders, could be administered only through the distribution of all the funds in the manner first adopted, *viz.:* the United States court method, instead of following that method part way and the Illinois court the balance of the way.

The efforts of the attorneys who devised this plan and justified it by ample authority resulted in benefit to all warrant holders and no injustice whatever was done to those who had already received part payment under the Federal court rule.

We have no difficulty in holding that a meritorious case for the allowance of solicitors' fees is presented by the facts in this case. No objection is made to the amount fixed by the court, which would be the only remaining reason against its allowance.

We have said more than should have been necessary, because it may appear to the casual reader that we have

receded from our position as to the manner in which these warrants should have been paid under *Lubezny* v. *Ball,* 389 Ill. 263, and we have, therefore, pointed out that the doing of equity at times requires a waiver of the strict rules of law, or as Blackstone has said: "Equity is the correction of that wherein the law, by reason of its universality, is deficient."

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*